**McALLISTER v. COSMOPOLITAN
SHIPPING CO., Inc.
No. 288, Docket 21023.**

Circuit Court of Appeals, Second Circuit.
July 23, 1948.

Writ of Certiorari Granted Nov. 22, 1948.
See 69 S.Ct. 167.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

Horace M. Gray, of New York City (Horace M. Gray and Edward R. Phillips, both of New York City, of counsel), for defendant-appellant.

Bertram J. Dembo, of New York City (Jacob Rassner, Robert Klonsky and Jack Steinman, all of New York City, of counsel), for plaintiff-appellee.

H. G. Morison, Asst. Atty. Gen., Leavenworth Colby and Edward L. Smith, Sp. Assts. to Atty. Gen., Admiralty and Shipping Section, Department of Justice, and Martin J. Norris, Attorney, U. S. Maritime Commission, amici curiæ.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a general verdict after a jury trial of a seaman's action brought under the Jones Act, 46 U.S.C.A. § 688, against the defendant for negligence and under the general maritime law for maintenance and cure. The plaintiff claims he was negligently caused to contract poliomyelitis on board a vessel owned by the United States and operated by the War Shipping Administration—the S. S. Edward B. Haines—while in Chinese waters. The cause of action is alleged to have arisen in November, 1945, after the enactment of the War Shipping Administration (Clarification) Act of 1943 (57 Stat. 45, 50 U.S.C.A.Appendix, § 1291).

The plaintiff McAllister was second assistant engineer employed by the United States on a government-owned vessel that was operated by the War Shipping Administration. The defendant is a shipping company which contracted with the War Shipping Administration to attend to the accounting and certain other shoreside business of The Haines and other vessels in accordance with the standard form of General Agency Service Agreement.

The plaintiff claims that the officers of the vessel negligently caused or permitted him to contract polio or infantile paralysis and negligently failed to give him immediate treatment by the so-called "Sister Kenny" method at Shanghai or at Tsing Tao and properly to care for him when sick.

On the first cause of action for negligence, the jury returned a general verdict for the plaintiff for $100,000; upon the second cause of action for maintenance and cure, they found a verdict for the defendant.

With respect to the first cause of action, the defendant appeals from the judgment as well as from the denial of its motions (a) to dismiss the complaint, (b) to direct a verdict on its behalf, (c) to set aside the verdict rendered, and (d) to grant a new trial.

With respect to the second cause of action for maintenance and cure the plaintiff appeals from the judgment entered upon a verdict in favor of the defendant on that claim.

The vessel sailed from New York on July 24, 1945, for the Far East. Upon arrival at Shanghai on September 26, 1945, notices were posted by the master stating that there was an epidemic of polio as well as other diseases in that area and orders were given to the crew to eat only in special places and not to mix with the Chinese. Various shore people came on board at Shanghai to do stevedoring work as well as a number of additional passengers. They used the common toilet facilities of the vessel and a common drinking fountain. Likewise the toilet facilities intended for the crew were used by the Chinese who came on at Shanghai. Moreover two Chinese cooks who came on at Shanghai used the same cooking utensils and handled the same food as the other cooks on the vessel. There was evidence that the plaintiff was in good health until stricken with polio.

The vessel remained at Shanghai until November 1st when it made a trip to

Hong Kong, returning to Shanghai on November 11th. The plaintiff testified that he began to feel ill about that date upon his return to Shanghai, and evidence was presented that the "commonest" period of incubation for polio is twelve to fourteen days, which would have begun during his prior stay at Shanghai where he had been exposed to the polio epidemic which we have discussed. On November 21st and 22nd the plaintiff while sick in bed complained to the chief mate of a stiffness in his neck, arms and legs. The chief mate testified that he was aware of an epidemic of polio in Shanghai at that time and that he then told the master of plaintiff's illness and suggested that a doctor should see him. He also stated that no doctor was secured at that time though there were doctors available at an army base ashore and on army and navy hospital ships in the harbor. Plaintiff also complained of his illness to others on the vessel and testified that he had lost his appetite, felt very weak and dizzy, and had a stiffness of his back, jaw, arms and legs. Thereafter, on November 23rd, The Haines left Shanghai and arrived at Tsing Tao on the 25th, docking on the 28th. During this trip plaintiff's illness increased, and he testified to having a burning sensation in almost his entire body, nausea, and muscular spasms. On November 30th arrangements were made to transfer him to a Marine Corps Hospital at Tsing Tao and this was accomplished the following day. His illness was there diagnosed on December 7th as polio and he was flown to Shanghai where he was received on board a naval hospital ship and his legs immobilized with sand bags. On December 13th he was flown to the Navy Base Hospital at Guam where the sand bag treatment continued until the 23rd when he was removed by a Navy A. P. A. type transport to the Marine Hospital at San Francisco, arriving on January 17, 1946. There the "Sister Kenny" treatment was first administered. He remained at that hospital until April 16th when he was flown to the East Coast and hospitalized, at his request, at the Marine Hospital at Staten Island, New York. He was discharged from that hospital on May 5th for treatment at Bellevue Hospital in New York City under the supervision of the National Foundation for Infantile Paralysis. Later treatment was received at the Hospital for the Ruptured and Crippled, under the same auspices. From there he went home where he had treatment by a visiting nurse for the rest of the year.

 It appears that the master and others on the vessel had reason to believe as early as November 22nd that the plaintiff might have contracted polio, yet they did nothing to secure diagnosis or treatment for him by physicians until November 30th when the arrangements were made to transfer him to the hospital at Tsing Tao. There was evidence from which the jury might find that the master should have sent the plaintiff to one of the hospital facilities available at Shanghai immediately upon being told of his illness on November 22nd. The plaintiff's medical experts were of the opinion that prompt treatment for a man in his condition in the early stages would have cured his disease or alleviated its effects and that he should have been put in a place where he would have received medical supervision and care, including perhaps treatment similar to that of Sister Kenny, which Dr. DiFiore testified was given patients at U. S. Government hospitals. It is argued, and the contention is supported by plaintiff's medical testimony, that this delay while traveling to Tsing Tao greatly contributed to the progress of his malady and substantially reduced his likelihood of rehabilitation. We realize that the promptitude of treatment and even the kind of treatment which would have alleviated plaintiff's condition were matters of dispute between the experts called by the respective parties but these questions involved issues of fact which were matters for consideration by the jury and were resolved by it in the plaintiff's favor.

 The plaintiff also contends that the defendant was negligent in failing to protect him properly from infection by polio, while the vessel was at Shanghai prior to November 1, 1945. In our opinion, the jury might properly find that his infection was caused by conditions negligently permitted to exist on shipboard at that

time which we have already outlined and which were conducive to the transmission of polio. The defendant argues however that plaintiff might have contracted polio when he took shore leave at Shanghai as he frequently did during that period. It is undoubtedly true that no one can be certain where he contracted the disease, but he had been warned by notices posted on the ship that there was danger of contracting polio in that port and to avoid associating with coolies when on shore and to eat his meals at American clubs available to seamen. This warning coupled with the fact that there was no evidence that the plaintiff did not give heed to it made it permissible for the jury to find that he became infected on shipboard due to negligence of the defendant rather than on shore. Therefore we find it unnecessary to determine whether conditions at Shanghai were such that the plaintiff should have been protected by being denied shore leave. We accordingly hold that there is a basis in the record for a finding by the jury that the defendant was negligent in failing to protect the plaintiff from contact with polio infection as well as in not giving him prompt and adequate treatment after the infection occurred.

■ The appeal by plaintiff from the judgment in so far as it denied recovery on the cause of action for maintenance and cure is open to question on the ground that it was not timely. The new Federal Rule of Civil Procedure, rule 73(a), 28 U.S.C.A. following section 723c, shortened the time for appeal to the Circuit Court of Appeals from ninety to thirty days and took effect on March 19, 1948. The judgment of the District Court in this case was entered on February 24, 1948. If, therefore, the plaintiff is required literally to comply with the new rule, he had only about a week in which to take his appeal after the date of defendant's appeal on March 18th and the effective date of this new rule which drastically cut down his time. Rule 86(b) states that the above new rule, 73(a), governs further proceedings in actions pending on its effective date, except where in the opinion of the court its application would not be feasible or would work in-

justice. Under the circumstances we are willing to assume that the application of the new rule would work an injustice and to hold that plaintiff's appeal is properly before us.

■ Coming to the merits, plaintiff's expert Dr. Frant testified that McAllister would require ten or fifteen years more of treatment and gave an estimate of what that treatment would cost. But Dr. Frant did not state what the treatment was to be. On the other hand, plaintiff's witness Dr. DiFiore, in answer to questions by the court, testified that plaintiff had reached about the maximum of his recovery and that further improvement, if any, would be very slight. He also said that according to his observation such cases showed little, if any, improvement after one year from the onset of the illness, but added that this opinion excluded the possibility of any relief by surgery. Sister Kenny testified that there are conditions in polio cases which will not respond to any treatment, and we believe there was evidence because of the testimony of Dr. DiFiore from which a jury might conclude that the plaintiff was beyond further recovery. Plaintiff's counsel relies on the fact that surgical treatment will be needed but what that surgical treatment, if any, would be is not disclosed by the record. Dr. Frant's testimony that he would require years of further treatment nowhere specified surgery, nor would the jury necessarily credit his conclusions in the face of the testimony of Dr. DiFiore to which we have referred. Upon such a record it was a question for the jury what witnesses to believe and whether to allow anything for maintenance and cure.

The defendant earnestly contends that because it was only a general agent of the United States acting under a conventional General Agency Service Agreement it was only liable for its independent torts of which there was no proof, and was not liable as owner pro hoc vice or for neglect on the part of the master and crew who were chosen by the War Shipping Administration. A similar contention has caused much discussion in the opinions of the courts. In our decisions in McGowan

v. J. H. Winchester & Co., Inc., and Buro v. American Petroleum Transport Corp., 168 F.2d 924, we held that companies which had entered into a type of agency contract similar to the one in the case at bar were not responsible for injuries to persons working on a vessel who were not seamen. We relied on the decision in Caldarola v. Eckert & Co., 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, where a majority of the Supreme Court had applied the rule of non-liability of a general agent to a stevedore for torts. We stated that the Caldarola decision and that of this court in Shilman v. United States, 2 Cir., 164 F.2d 649, had narrowed the holding in Hust v. Moore-McCormack Lines, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, to the extent that such a general agent was liable as an "employer" only to seamen on the vessel who are injured as a result of negligence in connection with its operation.

The Hust decision allowed a seaman to recover against the general agent under the Jones Act for injuries suffered through the negligence of the crew prior to the passage of the Clarification Act, 57 Stat. 45, 50 U.S.C.A.Appendix, § 1291. The defendant argues that the Hust decision was overruled by the Caldarola case, but such a conclusion would not seem to be open to us in view of the fact that the majority opinion in Caldarola expressly distinguished the right of a seaman under the Jones Act, upheld in the Hust case, from that of a third person such as a stevedore which was before the court for adjudication. Our decision in Shilman v. United States, supra, does not aid the defendant because we were there dealing with the question of liability of a general agent for seamen's wages and held that the Hust case involved only liabilities in tort under the Jones Act and not contractual liabilities. There may be possible conflicts between the Hust and the Caldarola decisions and some difficulty in reconciling the two, but for the reason we have given we regard the Hust case as still controlling upon us.

The defendant argues that the decision in the Hust case related only to li-

ability of a general agent for torts occurring prior to the passage of the Clarification Act and that as to causes of action arising after that date the seaman's only remedy is against the United States under the Suits in Admiralty Act. The Hust case held that a tort committed prior to the passage of the Clarification Act gave rise to a right of recovery against the general agent under the Jones Act and that Congress did not intend to destroy such a right by the retrospective provision of that Act giving an action against the government. The opinion expressly disclaimed any intention of dealing with liability for prospective acts of negligence, but the theory of liability which it adopted seems to be equally applicable to such acts. The Clarification Act, however, makes no reference to the liability of a general agent and we cannot see why it should be thought to eliminate such liability, if it existed. Moreover, it is to be noted that the government in its brief as amicus curiae makes no claim that the Clarification Act has any bearing on the plaintiff's right of recovery. We believe that the purpose of the Act was to clarify the rights against the United States of seamen employed by the War Shipping Administration and not to disturb other rights of seamen against the general agents so far as they existed. The question whether, and how far, such other rights exist is, as we have already said, a matter for determination by the Supreme Court in dealing with the scope of the Hust decision. Accordingly we must respectfully differ with the opinion of the Supreme Court of Oregon in Fink v. Shepard S.S. Co., Or., 192 P.2d 258, rehearing denied Or., 193 P.2d 537, which held that the Clarification Act prevents a suit against the agent. We are, therefore, remitted to the theory which we have already expressed that the Hust decision governs the situation here and that its reasoning, in spite of any limitation in the opinion of the issues directly passed upon, points toward liability of the general agent under the Jones Act in the present case.

For the foregoing reasons the judgment is affirmed as to both appeals.