### FLEGENHEIMER v. GENERAL MILLS, Inc.

### No. 294, Docket 22031.

United States Court of Appeals Second Circuit.

Argued June 13, 1951.

Decided Aug. 3, 1951.

Guy M. Page, Burlington, Vt., for claimant-appellant.

Bailey & Bailey, and A. Pearley Feen, Burlington, Vt., for plaintiff-appellee.

McNamara & Larrow and Austin & Edmunds, Burlington, Vt., for defendant.

Horace H. Powers, St. Albans, Vt., for Central Vermont Railway, Inc., trustee.

Hubert S. Pierce, Newport, Vt., for Canadian Pac. Ry. Co., trustee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and L. HAND, Circuit Judges.

L. HAND, Circuit Judge.

█ This is an appeal from an order, dismissing a claim by an intervening party—General Mills, Inc.—to property which the plaintiff had attached in the state court, in an action in contract brought against the Manitoba Sugar Company, Ltd., a Canadian corporation. In the state court the plaintiff attached several parcels of "beet pulp" which, as he asserted, were the property of the Manitoba Company, and that company removed the cause to the district court on the 29th of January, 1945. On the 8th of May, the appellant, General Mills, was granted leave to intervene and it set up a claim of ownership to the goods attached, based upon the following facts. The Manitoba Company had entered into a contract with General Mills for the sale of the "beet pulp," had delivered the goods to a carrier on "straight" bills of lading, and the principal question was whether the title had failed to pass because the carrier had not received notice of the transfer in season. The district court after a trial dismissed the claim of General Mills on December 15, 1948; and it is from this order, somewhat amended, that General Mills appealed on January 30, 1951. The appellee has not moved to dismiss, but since it is our duty to decide any question involving our jurisdiction whether or not the parties raise it, we must pass upon our jurisdiction over this appeal.[1]

█ The appealability of the order of course depends upon federal law: specifically, upon whether the dismissal of the claim to the attached goods was a "final" order. That in turn depends upon whether after the dismissal the intervener had any power to dispute the plaintiff's claim against the defendant, as security for which the pulp was attached. That would seem to be a question of state law, and arguendo we shall so assume: i. e., that the dismissal of the intervener's claim should have the same effect upon any further privileges he may have in the district court that it would have had, had the action remained in the state court. Nevertheless by way of caveat it is to be noticed that, although the Judiciary Law [2] declares that goods of the defendant attached in a state court shall respond to any judgment the plaintiff may recover "in the same manner" that they would have responded to a judgment of the state court, this applies only to "the goods or estate of the defendant", and it does not inevitably follow that an intervener, whose claim to the attached goods has been dismissed, is foreclosed from disputing on the merits the plaintiff's right to any judgment whatever, just as the defendant himself may dispute it when goods concededly his own have been attached.

█ Whether the state or the federal law governs, on principle it is clear that, certainly when as here the defendant has not been served personally and cannot be, an intervener ought to have the privilege of contesting the plaintiff's claim against the defendant on the merits. The best argument to the contrary is that, if the intervener appeals and secures a reversal of the dismissal and an award of the property to him, the case is over as between the plaintiff and himself; as indeed it also is, if the dismissal is affirmed. However, in the case at bar an affirmance of the dismissal would not be conclusive as between the intervener and the Manitoba Company. The Manitoba Company, if it has not been paid, will be free to sue the intervener for the price; and if it has been paid, it will be free to resist any effort of the intervener to recover the price. Our affirmance will not estop the Manitoba Company in either case, for as we have said it has not been served and cannot be. The intervener

1. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 184, 56 S.Ct. 780, 80 L.Ed. 1135; United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263; DeFilippis v. Chrysler Sales Corp., 2 Cir., 127 F.2d 530, 531; Hock v. 250 Northern Ave. Corp., 2 Cir., 142 F.2d 435, 436; Flegenheimer v. Manitoba Sugar Co., 2 Cir., 182 F.2d 742.

2. Section 1450, Title 28 U.S.Code.

will have to accept the hazard of an action on the merits in which the passage of title to the goods may be differently decided. Its predicament could indeed be obviated, if the Manitoba Company had been served personally, or if it were possible to serve it; but it has not been so served, and presumably it cannot be because it is a Canadian corporation. Therefore the only relief open to the intervener is the privilege of contesting the claim of the plaintiff against the Manitoba Company. That, it is true, is not complete relief, for a judgment on the plaintiff's claim against the Manitoba Company will not conclude that company; but at least the intervener has an interest to protect even if the order is affirmed. It should be allowed to protect that interest against a claim that may be unwarranted. For this reason the order should not be regarded as ending all controversy between the plaintiff and the intervener; and ought not therefore to be treated as "final" for appellate purposes.

There are indeed some jurisdictions which have held that an intervener may not dispute the attaching creditor's action against the defendant; but it is not clear that in these the defendant was not served, or at least that the intervener could not have brought him into the suit and thereby made the judgment conclusive as between them. In any event it has never been decided in Vermont that in a situation like this the intervener is precluded from challenging the plaintiff's right. The nearest case that we have found is Sanborn v. Kittredge & Morrill, 20 Vt. 632, in which the facts, not unduly simplified, were as follows. The plaintiff attached goods which he alleged belonged to one, Goodell, against whom he had a claim, and who, he said, got his title from another person, who, like the plaintiff, was named Sanborn. Morrill attached the same goods on a claim he had against this second Sanborn, claiming that title had never passed to Goodell. The court found that the title had passed to Goodell, and in the course of the opinion said 20 Vt.

at page 640, that Morrill might not challenge the regularity, and therefore the validity, of the plaintiff's attachment as Morrill had tried to do. The suit was in equity and it did not appear that Goodell could not have been joined as a party so that the decision would bind him as against Morrill. Certainly there is nothing either in the decision or the opinion to lead us to suppose that in a situation such as that at bar Morrill would have been denied the privilege of contesting the claim of the plaintiff against Goodell.

On the other hand Cushing v. Laird, 107 U.S. 69, 2 S.Ct. 196, 27 L.Ed. 391, seems to us squarely to decide that such an order is not "final." Cushing sued Laird in the admiralty for the loss of his vessel, "The Sonora." He could not serve Laird personally, but—proceeding by "foreign attachment" under the Admiralty Rules—he attached a fund of about $31,000 in the hands of Foster & Thompson, attorneys for both Laird and another person, Prioleau. This sum was the proceeds of the sale of another ship, "The Wren," which had been sold pending the termination of a libel to condemn her as prize. In that suit the district court had not only held that she was lawful prize, but had awarded the proceeds to the United States. The Supreme Court reversed that decree,[3] and awarded the proceeds to Laird, who had appeared in the suit by "The Wren's" master, although he had not done so otherwise. The proceeds were therefore paid to Laird's attorneys, in whose hands they were, as we have said, when Cushing attached them. These attorneys, being also attorneys for Prioleau, put in a claim on behalf of Prioleau in Cushing v. Laird, alleging that Laird had sold "The Wren" to Prioleau before her capture, and that the proceeds therefore belonged to Prioleau. Since Prioleau had not intervened in the prize suit, the decree in that suit necessarily did not, and could not, bind him as against Laird, even if Laird had personally appeared. Judge Blatchford, when Cushing v. Laird came on for trial before him[4] in the district court, first dismissed the claim

---

3. The Wren, 6 Wall. 582, 18 L.Ed. 876.

4. 6 Fed.Cas. p. 1024, No. 3,509, 6 Ben. 408.

of Prioleau, the intervener, and some months later rendered a decree in favor of Cushing against Laird, to the payment of which he directed the proceeds to be applied. The ground of his decision was that the decree in a prize suit bound everyone, and that the award of the proceeds to Laird was therefore good as against Prioleau, regardless of Prioleau's not being a party to that suit.

Prioleau appealed to the circuit court from the decree which dismissed his claim as intervener, and later from the decree awarding damages to Cushing against Laird, and both appeals came on to be heard at the same time before Chief Justice Waite, sitting at circuit. He dismissed the first appeal, but considered its merits on the appeal from the final decree and held that Prioleau was entitled to the fund attached.[5] His reasons for dismissing the first appeal were as follows: "The decision that the fund * * * belonged to Laird was interlocutory only. It settled the title to the fund for the purposes of the suit, but did not adjudge that it be paid to the libellants. If, in the further progress of the cause, they had failed to maintain their claim against Laird, the decision would have been of no avail. The garnishees"—the attorneys who held the money—"did not become finally bound to apply the fund they held to the payment of the demand sued upon, until the order to that effect was entered, September 19th. The order of April 26th left the final disposition of the fund open. The actual appropriation was not made until September 19th." In affirming the dismissal of Prioleau's appeal from the denial of his claim to the fund the Supreme Court [6] used language so precisely similar to Chief Justice Waite's that it is unnecessary to quote it. In Swift & Co. v. Compania Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206, the libellant began by foreign attachment of a ship of the respondent which the lower courts had

vacated. It was certainly arguable that this was a final decree because nothing further remained to be done. Frankfurter, J., did not however support the Court's jurisdiction on that ground but upon the doctrine that, even interlocutory orders may be appealable, if the need for immediate intervention be grave enough, as he held it was. Moreover, he took pains to recognize the continued validity of Cushing v. Laird, supra, saying in 339 U.S. at page 689, 70 S.Ct. at page 865: "The situation is quite different where an attachment is upheld pending determination of the principal claim. Such was Cushing v. Laird, 107 U.S. 69, 2 S.Ct. 196, 27 L.Ed. 391, which is urged on us. In such a situation the rights of all the parties can be adequately protected while the litigation on the main claim proceeds."

■ Since we have found no Vermont authority to the contrary, we hold that these decisions of the Supreme Court should be our guide; quite aside from the first question we raised, which we leave unanswered: i. e. whether in any event we should be obliged to follow the state law as to whether the denial of an intervener's claim to attached property deprives him of any privilege of contesting the plaintiff's claim against the defendant. The appeal will therefore be dismissed and the decision as to the intervener's title will await final judgment in the action. We have not forgotten our disposition of the intervener's earlier appeal from an order, very largely the same as this.[7] That appeal we dismissed for two reasons: (1) there had been no "determination and direction" such as Rule 54(b), Fed.Rules. Civ.Proc. 28 U.S.C.A. now requires; and (2) because the order itself provided that the question of Canadian law had been reserved. The Canadian law has now been stipulated, and the judge has made a "determination and direction" under Rule 54(b); so that the present appeal is therefore formally regular. Since nothing that we

---

5. 6 Fed.Cas. pp. 1043, 1050, No. 3,510, 15 Blatchf. 219.

6. Cushing v. Laird, 107 U.S. 69, 76, 2 S. Ct. 196, 27 L.Ed. 391.

7. Flegenheimer v. Manitoba Sugar Co., 2 Cir., 182 F.2d 742.

said before is relevant on this appeal, we at once proceed to the only remaining question: *i. e.*, whether a "determination and direction" under Rule 54(b) can make a judgment or order "final" and therefore appealable which was not so before 1948 when the Rule was amended. In Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, because of the absence of any "determination and direction," we dismissed an appeal which would otherwise have been valid, and in so doing we construed the Rule as meaning no more than that decisions of the district court which had been "final" as the law stood, were to be deemed still *sub judice* unless the judge declared that there was no just reason for his retaining any further power over them. That interpretation certainly contradicted the proposition that the amendment extended the appellate jurisdiction of the Courts of Appeal. On the other hand, in Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, on an appeal from an order, which all agreed would have been "final" before the amendment, and in which there had been a "determination and direction," a majority of the court said *obiter* that, when the appeal disposed of a "claim," as distinct from a purely interlocutory procedural incident, a "determination and direction" conferred on us an appellate jurisdiction which would not otherwise exist. If this had been necessary to the decision in that case, we might feel forced, in accordance with our usual practice, to yield to it, though we did not agree; but it seems to us that, as the situation is, we cannot properly avoid deciding the question according to our independent judgment, since the result here turns upon the answer.

Quite aside from the language of Rule 82, which alone we should find insurmountable, the text of Rule 54(b) as amended precludes a construction that would make the jurisdiction of courts of appeal dependent upon the discretion of the district court. The language is that "the court may direct the entry of a final judgment upon one or more * * * claims only upon an express determination that there is no just reason for delay". It then goes on to say that without a "determination and direction * * * all the claims" shall be "subject to revision" until all claims are decided. This is language of restriction, not of grant; it sets limitation upon the district court's power to enter a "final judgment"; nowhere in it can be found a suggestion that the judge can make that "final" which was not "final" before. The concluding language—"the order * * * is subject to revision"—confirms this view. In conclusion we must emphasize the strange anomaly that would otherwise result. Although there are of course abundant instances where appellate courts are granted a discretion as to what they will review, so far as we know, this would be unique, if it conferred a power upon a lower court to determine the jurisdiction of a higher court. Had the Supreme Court intended so revolutionary an inversion of what had been the uniform custom theretofore, we believe that it would have expressed its intent less indirectly; and that conclusion is reinforced when we remember the self-denying ordinance which it imposed upon itself in Rule 82. No doubt the answer is not as clear as one might wish; else the courts would not be so at odds as they are. In the end the Supreme Court will no doubt have to pass upon it; meanwhile we can only follow what light we have.

Appeal dismissed.