## LOPINSKY v. HERTZ DRIVE–UR–SELF SYSTEMS, Inc. et al.

### No. 98, Docket 22156.

United States Court of Appeals
Second Circuit.

Argued Nov. 16, 1951.

Decided Dec. 10, 1951.

Harry Zeitlan, New York City, for plaintiff-appellant; Herbert L. Fine, New York City, on the brief.

John W. Trapp, New York City, for defendant-appellee; Peter M. J. Reilly, New York City, on the brief.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

The appellant initiated the present action in the District Court for the Southern District of New York against the Hertz Drive-Ur-Self System, Inc. (hereinafter called "Hertz"), Edward J. O'Brien, and Charles A. Harrison administrator of the estate of Walter Benedict Baer. Briefly, the complaint alleges that the plaintiff's intestate was killed on May 29, 1950, in an automobile collision on Route 22 in the State of New York; that the automobile which caused the death of the deceased was operated by Walter Benedict Baer, was owned by the defendant Edward J. O'Brien, and was rented by Walter Benedict Baer from Edward J. O'Brien; that Edward J. O'Brien rented the automobile to Walter Benedict Baer as a licensee of and on behalf of Hertz, and that the licensee, Edward J. O'Brien, conducted his business in East Norwalk, Conn. Service upon the defendant Hertz was made through a United States Marshal by leaving a copy of the summons and complaint with George R. Gannon, assistant comptroller of the Carey Driveurself System, Inc. (hereinafter called "Carey"), a New York corporation. On the motion of Hertz, Judge Ryan, on the ground that the court lacked jurisdiction over Hertz, vacated the service of the summons and complaint and entered judgment in favor of Hertz. The questions arising on this appeal are whether Hertz is jurisdictionally present in the State of New York, and if so, whether service was properly made. Since we agree with the conclusion reached by the district judge that the court lacked jurisdiction over Hertz, it is unnecessary to decide the latter question.

The jurisdictional presence of a foreign corporation depends on whether the corporation is doing business within the state. People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587. From the affidavits it appears that Hertz maintains no offices of its own and does not directly conduct any business in New York. However, the appellant contends that Carey was in fact acting as the agent of Hertz in the business transacted by Carey in New York. This contention is based on the following facts: Hertz devised a plan or system of renting automobiles to customers who drive the automobiles themselves, the system being known

under the trade-name of Hertz Drive-Ur-Self System. In order to effectuate the system on a national scale, Hertz licenses hundreds of local individuals and corporations throughout the United States and Canada to use its system and the trade-name. Carey Driveurself, Inc., a New York corporation, is such a Hertz licensee, but independent and locally owned. The license agreement between Hertz and Carey provides, *inter alia,* for the payment of specified fees by the licensee for each car maintained by Carey in its Driveurself business. The licensee is required to use the Hertz standard form of rental agreement and to permit the licensor to inspect its premises, automobiles and records and accounts. Hertz's obligations are limited to assisting the licensee in procuring the various materials used in the Driveurself business and to help in locating automobiles which may have been stolen from the licensee.

▇▇▇ This license agreement cannot be described as a subterfuge to avoid local jurisdiction, see Bach v. Friden Calculating Machine Co., 6 Cir., 167 F.2d 679, and does not constitute an appointment by Hertz of Carey as its agent for the purpose of renting automobiles in New York. Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900. The appellant makes much of the fact that the Manhattan Telephone Directory lists Carey's address and telephone number under the name of Hertz Drive-Ur-Self System and that an advertisement in the Classified Directory features the name "Hertz" rather than that of Carey. However, it appears that the advertisement is paid for by Carey, and the featuring of the Hertz name is simply a means of directing potential customers to a place which rents automobiles since the Hertz name would in all likelihood be more familiar than that of Carey. In our opinion Carey was not an agent of Hertz to do business in New York but a mere licensee.

For the foregoing reasons, the judgment is affirmed.

CLARK, Circuit Judge (concurring).

I agree with the opinion and decision both in what is explicitly stated and in what is necessarily implied, *viz.,* that we have here on appeal an appealable judgment. In view of developments in this circuit hereinafter noted, I believe it is necessary or at least desirable to indulge in some fuller explanation of this part of our decision. For the parties named as defendants and legally responsible for the one accident which killed plaintiff's intestate were the administrator of the deceased operator of the colliding car, the owner, and the asserted licensor under the Hertz Drive-Ur-Self Systems (the present defendant-appellee) and no order or judgment was entered against the first two. Since the core of the case was this single accident, here were all the elements of "jointness" so called, as stressed in Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, 335, 336, to render this separate judgment not immediately appealable under the principles of law in force before the amendment to Fed. Rules Civ.Proc. rule 54(b), 28 U.S.C.A. But here the judge in directing the entry of a final judgment for this defendant also proceeded under the new form of the rule to determine that there was no just reason for delay. This action by him brought the case within the operation of the statute granting appeals from final decisions of the district courts, 28 U.S. C. § 1291, as we held in Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, July 26, 1951, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, citing numerous decisions of appellate courts on the new rule.

Hence, but for one circumstance, no further comment would be necessary. That circumstance is the decision eight days later by another panel of this court that the rule as thus applied must necessarily be considered invalid: Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, Aug. 3, 1951.[1] Although the court provided no documentation

---

1. Although the court formally interpreted the rule as not applying to accelerate finality in the one instance to which it is applicable (while conceding it power to authorize postponement of finality)

this, as is made clear, is an interpretation *in extremis'* to preserve the remnants from invalidity. Both the clear language of the amendment and its history with the Advisory Committee [see

for its holding either in the past history of rule-making or in precedents such as the directly relevant holding of Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, the opinion and decision necessarily put in jeopardy fully a third of the federal civil rules. When an act of Congress is under attack the Attorney General must be notified so that he can come in and defend it. 28 U.S.C. § 2403. No similar procedure protects the rules even though they have been formally passed upon by the Supreme Court, and, having been laid before Congress, found unobjectionable there. Questions such as this are not the kind counsel are likely to examine and brief; while litigants desire certainty, their interest in what certainty is not so immediate. Consequently the question is likely to come up in the court, with no help whatsoever from outside sources—as has indeed occurred with all our recent cases on the point. The background of history and precedent is then likely to be unknown to the adjudicators. But it is important and, I submit with deference, impelling.[2]

When in 1935 the Supreme Court constituted the Advisory Committee on Rules of Civil Procedure and charged it with the duty of drafting a set of rules for effective district court procedure, that Committee was confronted at once with definite problems as to the extent of the Court's power to adopt particular rules urgently needed to make the new procedure workable. These arose because the questions had not been visualized by the draftsmen of the then Enabling Act, passed on June 19, 1934—the former 28 U.S.C. §§ 723b, 723c—and that act appeared to have certain gaps and ambiguities. The statute granted authority to regulate the practice and procedure in the district courts, and questions hence arose as to the extent of the power by rule to regulate the admission of evidence, to su-

persede statutes, to provide for appellate practice, and to amend rules once adopted. These were all matters of consequence; they assumed increased importance because the Supreme Court, pursuant to a well understood popular mandate,[3] had already announced its determination to unite the federal law and equity procedures. How could that mandate be carried out if, for example, the numerous existing statutes regulating details of federal procedure continued to apply in equity, but not in law, because the superseding power of the rules was stated only in that section of the act which dealt with rules in actions at law? (That particular problem was definitely settled, in accordance with the Committee's view, in the decision in Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, in 1941, in which the Court—although divided on another point—was unanimous as to the validity of the superseding power; it is now made extensive with the grant of rule-making authority in the present statute, 28 U.S. C. § 2073.) And how further could it be carried out if the two distinctive and separate types of appellate review must necessarily be continued?

The Committee had no difficulty in reaching at once the decision that rule-making authority existed as to all activities taking place in the district courts, even though they might consequentially affect appellate practice; this would include such matters as the manner of taking the appeal, allowing the substitution of the simple notice of appeal for the old allowance and citation, and all the details as to making up of the record for transmission to the upper court. It also included, quite clearly, Rule 54(b) in its original form, which accelerated finality of judgment in many instances of the "split judgment," made useful by the wide joinder of parties and of claims featured in the new procedure. This rule had its definite

the Committee's Note to F.R. 54(b) in its Report of June 1946, 70–72] show that this does extreme violence to the intent of the rule makers.

2. While the cases discussing the amended rule are collected in Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, this important

history is not stated there, since the writer did not know at the time of the preparation of the opinion that its validity was under attack.

3. The background of this is stated in Mitchell, The Federal Rules of Civil Procedure, in David Dudley Field Centenary Essays 73, 74–79, 1949.

consequence in the trial court. Thus it was immediately effective in affording a basis for the award of costs to a winning party, the issuance of a writ of execution, and the like. See Rule 62(h). Its only effect upon appellate procedure was consequential because of the existence of a statute expressing the policy of the Congress—and always quite within its control—that appeals should be taken from *final* decisions.

But there still remained the problem as to those direct regulations of appellate practice which would be quite necessary to make a new and uniform procedure workable. Faced with this problem the Committee asked the present writer, as its Reporter, to examine the legal background and to report thereon. This he did with the assistance of associates, presenting a lengthy memorandum which was then published in substance as Clark, Power of the Supreme Court to Make Rules of Appellate Procedure, 49 Harv.L.Rev. 1303, 1936. We found that there was considerable reserve power in the Supreme Court from earlier statutes and traditional exercise, as was illustrated over the Court's history down to and including the Equity Rules of 1912, and that authority existed beyond the 1934 act for these necessary additional rules as well as the others. The Committee adopted this view, but took pains to set it forth with care—explaining the two classes of rules involved and the lack of question as to the first—in a letter to Chief Justice Hughes of

May 1, 1936, which is reprinted as a Foreword to the Preliminary Draft of Rules of Civil Procedure, May 1936, pp. xi, xii. This clear statement—reprinted in the footnote[4]—was incorporated by specific reference in the Report of Rules of Civil Procedure, April 1937, p. v. Since the Supreme Court, thus carefully advised, adopted these very important provisions, it has been naturally assumed that it adopted the Committee's view. 1 Moore's Federal Practice § 1.04, 1st Ed. 1938; 2 Moore's Federal Practice ¶1.04[4], p. 30, 2d Ed. 1948. Moreover, it should be noted that these very matters were carefully explained by Chairman Mitchell of the Committee in 1938 at the Cleveland Rules Institute of the American Bar Association, pp. 181, 182, and again at the New York Symposium, p. 226.[5] Such contemporary statements "by the authorized spokesmen" of the Committee, as we know, have been held "of weight" in the Court's later consideration of the rules. Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 444, 66 S.Ct. 242, 90 L.Ed. 185.

The subsequent history, whether the rules be viewed as a whole or this particular rule be stressed, amply bears out the interpretation thus originally made. Considering, first, the rule itself, it was at once recognized that its original form of split judgment generally on multiple claims was a definite change and extension of former principles, as, for example, in situations involving permissive counterclaims arising out

---

4. *"(2) Power of the Supreme Court to make rules in any way relating to the practice on appeals.* The statute under which we are operating relates to proceedings in the United States District Courts. Many matters which take place in the lower courts affecting appeals are admittedly within the scope of this statute, such as the settling of the records for appeal. There are many respects, however, in which the Committee found it almost essential to touch practice on appeal. (See, Rule 50 relating to the effect of an error in the admission of evidence; Rule 57 as to the effect of an error in the charge; Rule 70 as to the effect of other errors; Rule 72 as to the manner of taking appeals; and Rule 68 as to the effect of the findings of a court in a jury-waived case.) The Committee felt it absolutely necessary to

deal with these subjects. An elaborate memorandum has been prepared dealing with the various statutes enabling the Supreme Court to make rules of practice, and the Committee concluded that if not the particular statute under which it is acting, then under other general statutes the extent to which we have dealt with appeals is within the power of the Court."

The rules above cited—50, 57, 70, 72, 68—became in final enactment Rules 43, 51, 61, 73, and 52.

5. Chairman Mitchell cited and relied upon the writer's article in 49 Harv.L.Rev. 1303, 1936, which is also cited in the Advisory Committee's note to the completed Rule 73(a), the very important note covering the manner, the subject matter (in considerable part), and—now—the time of appeal.

of distinct and differing transactions.[6] So clear was this that this court felt compelled, in Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, to overrule earlier contra cases in the circuit.[7] At length the matter came before the Supreme Court which upheld and applied the then rule in a leading and careful opinion: Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478. This case appears to be clear authority for the present rule in its criticized aspect.

But the change went so far as to infringe on the ancient and settled federal policy against "piecemeal appeals," see, e. g., Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911, and it became obvious that some retreat was necessary. Further there developed, notably in this circuit, a conflict of view as to finality with regard to claims against several defendants liable only alternatively or at any rate not jointly. This, then, was one of the rules singled out by the Committee for intensive restudy in 1943. The extent of the Committee's consideration is somewhat indicated by the note to earlier drafts of the amendment (Preliminary Draft of Proposed Amendments, May 1944, 64, 65; Second Preliminary Draft, May 1945, 62, 63), but is set forth in some detail in the note in its Report of June 1946, 70–72. The Committee had excellent support through its contacts with the bench and bar and, as it points out, received well-nigh universal approval for its new proposal from these interested and alert groups. What it desired to do was to restore the historic federal principle, while offering some means of relief for the occasional hard case where immediate review was convenient and desirable. The result was a rational solution achieving these objectives which aroused the enlightened interest, in advance of its actual operation, of the Supreme Court itself in Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 512, 70 S.Ct. 322, 324, 94 L.Ed. 299,[8] and received the support of writers and judges[9] until its present setback.[10]

6. Compare Nachtman v. Crucible Steel Cc. of America, 3 Cir., 165 F.2d 997, 998, with General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 432, 53 S.Ct. 202, 77 L.Ed. 408; or Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, and Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, overruling Sheppy v. Stevens, 2 Cir., 200 F. 946, and Stromberg Motor Devices Co. v. Arnson, 2 Cir., 239 F. 891, with such earlier cases. See also Audi Vision Inc. v. RCA Mfg. Co., 2 Cir., 136 F.2d 621, 623, 624, 147 A.L.R. 574, and Toomey v. Toomey, 80 U.S.App.D.C. 77, 149 F.2d 19. Mr. Dodge's reference to "piecemeal judgments" at the Washington Institute, Proceedings of Washington Institute on Federal Rules 174, 1938, appears to have been prophetic.

7. See note 6 supra.

8. The Court, after quoting the new rule in full and stating its "obvious purpose," as indicated by the committee notes, "to reduce as far as possible the uncertainty and the hazard assumed by a litigant who either does or does not appeal from a judgment of the character we have here" because of the opportunity it gives litigants "to obtain from the District Court a clear statement of what that court is intending with reference to finality, and if such a direction is denied, the litigant can at least protect himself accordingly," then states:

"But this new rule—which became effective on March 19, 1948—was not in effect at the time of the 1947 decree in this case and it would not be appropriate to attempt to determine its effect on cases of this kind beyond observing that it may do much to prevent them from coming here."

9. The validity of the rule as a *district* court regulation is specifically upheld in Winsor v. Daumit, 7 Cir., 179 F.2d 475, 477. Other cases are cited in Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201; they include such an extensive application of the rule as in Lyman v. Remington Rand, 2 Cir., 188 F.2d 306, questioned in 5 Moore's Federal Practice 2926–2930, 2d Ed. 1951. Thus compare the explicit language of Etten v. Kauffman, 3 Cir., 179 F.2d 302, certiorari denied 340 U.S. 931, 71 S.Ct. 492, 95 L.Ed. 672, and the direct implication of Flegenheimer v. Manitoba Sugar Co., 2 Cir., 182 F.2d 742, contrary to the later holding in the same case cited in the text. See also 47 Col.L. Rev. 239; 32 Minn.L.Rev. 624; 56 Yale L.J. 141; 58 Yale L.J. 1186; Moore's Commentary on the U. S. Judicial Code 515–518, 1949; and cf. also 47 Mich.L. Rev 233; 49 Mich.L.Rev. 442; and 15 U. of Chi.L.Rev. 960.

10. After Flegenheimer v. General Mills, supra, 2 Cir., 191 F.2d 237, a similar re-

Validity is also strongly supported by the history of other important rules. Necessarily to be included, along with Rule 54(b), in the group of rules which directly affect only district court practice, but have also some consequential meaning for appellate practice, are at least Rules 41, 49, '50, 55, 56, 58, 59, 60, 68, 70, and 71A. These include such well known rules as those relating to voluntary or involuntary dismissal with or without prejudice, special verdicts and interrogatories, the motion for directed verdict with reservation of decision, new trials, relief from judgments, default and summary judgments, when the clerk shall enter judgment, the method of offer of judgment, the judgment directing specific acts, including the vesting of title, and the extensive procedure up to judgment of the new condemnation rule. Many of these rules have been so extensively litigated that specific citation is surely unnecessary. But to cite only two, the provisions for reservation or delay in decision of the motion for directed verdict[11] and for the entry of complete, partial, or other form of summary judgment[12] would seem surely as far-reaching as any part of the rule now under consideration.

Turning to the other group comprising those which directly regulate appellate practice and which must be *a fortiori* invalid if those cited above are doubtful, we must certainly include at least Rules 46, 51, 52, 53(e), 61, 73, 74, 75, 76, and 81(a) (2), (3), and the former (7). Thus included are rules abolishing exceptions to rulings on evidence, but requiring exceptions to the charge, concerning the effect of findings or of a report of a master, harmless error, the method and time of taking appeal, and all details as to making up the record, including the abolition of summons and severance and various special procedures made subject to the appeal rules. Here, too, citation of the wealth of supporting precedents must be restrained; reference may be limited to the famous "clearly erroneous" rule as to findings of fact (the uniform rule supplanting the old divided and divergent law and equity reviews and applied in literally hundreds of cases),[13] the recent rule materially shortening the time for appeal upheld in this court and the Supreme Court among others,[14] and the extensive provisions to the effect that filing any one of several listed motions automatically suspends the running of the time for appeal.[15] Truly it does not seem unduly venturesome to suggest that the Court is not likely to repudiate this substantial body of precedent or blot out so much of effective federal procedure, particularly when it is recalled that it has not yet ever invalidated a rule, not even such a rule as 4(f) extending the territorial limits of effective serv-

sult was reached in Bendix Aviation Corp. v. Glass, 3 Cir., Sept. 6, 1951, Chief Judge Biggs dissenting, but the case is now on rehearing before the full bench. [Opinion withdrawn and new opinion, affirming, filed Feb. 19, 1952, 195 F.2d 267.]

11. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177.

12. See, e. g., Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Griffin v. Griffin, 327 U.S. 220, 235, 236, 66 S.Ct. 556, 90 L.Ed. 635.

13. United States v. United States Gypsum Co., 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L.Ed. 746; United States v. Yellow Cab Co., 338 U.S. 338, 341, 342, 70 S.Ct. 177, 94 L.Ed. 150.

14. Mitchell v. White Consolidated, Inc., 336 U.S. 958, 69 S.Ct. 889, 93 L.Ed. 1111; Petition of Schuette, 2 Cir., 178 F.2d 920; Smith v. Lehigh Valley R. Co., 2 Cir., 174 F.2d 592; McAllister v. Cosmopolitan Shipping Co., 2 Cir., 169 F.2d 4, reversed on the merits, Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Preston v. Aetna Life Ins. Co., 7 Cir., 174 F.2d 10, certiorari denied Aetna Life Ins. Co. v. Preston, 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504; Hart v. Knox County, 6 Cir., 171 F.2d 45. This change had been urged by the Judicial Conference, Sept.Sess.1944, 16; Sept.Sess.1945, 25.

15. Healy v. Pennsylvania R. Co., 3 Cir., 181 F.2d 934, certiorari denied 340 U.S. 935, 71 S.Ct. 940, 95 L.Ed. 674; Reconstruction Finance Corp. v. Mouat, 9 Cir., 184 F.2d 44, 48.

ice, which was widely questioned even by members of the Advisory Committee. See Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185.

Against this formidable array of authority (which, it must be added, appears not to have been within the court's contemplation) the only rationale suggested in Flegenheimer v. General Mills, supra, 2 Cir., 191 F.2d 237, is the inappropriateness of a principle allowing a trial judge to fix the jurisdiction of an appellate court. But the suggestion proves too much or too little. For inevitably the trial judge, and he alone, must time and spark operation of the appellate machinery; it is his product which furnishes the appellate grist and until he acts there is nothing for review. And no appropriate means have yet been devised to make a trial judge decide before he is ready. In any event this is a matter for administrative control through court councils or directors, and not for judicial reprisals affecting litigants. Since the trial judge has such control of the over-all picture, it is somewhat surprising to find question when his action in this small area of confusion is merely canalized so as to be understood by litigants and other courts at a time when that knowledge is most useful. And it is the more confusing when the effect of the rule in allowing the judge to postpone decision until such time as he is ready to signal finality is so readily and completely conceded. Actually the rule carries out present policies with both deftness and definiteness. The latter particularly is a boon to the litigants, as noted by the Court in Dickinson v. Petroleum Conversion Corp., supra note 8. It takes care of the few hard cases through the medium of action by the only judicial officer who at that stage of the case can know that they are the cases requiring immediate review. For the others it is a proper adjunct to the enforcement of the

policy against piecemeal appeals. The legislature can still change that policy without reference to the rule if it wishes; the point is that the rule is a help, rather than a hindrance, to the execution of legislative policy. That it has worked well and has been a clarifying and beneficial influence, the cases (at least before Flegenheimer) amply demonstate. It would be a misfortune to have this good and desirable accomplishment now abruptly blotted out.

Flegenheimer v. General Mills, supra, 2 Cir., 191 F.2d 237, presents other anomalies, beyond its summary rejection of rule-making. It was a flat repudiation not only of the Pabellon case of a week earlier by another panel of the court, but also of the direct implication on the earlier appeal of the same case before yet another panel, Flegenheimer v. Manitoba Sugar Co., 2 Cir., 182 F.2d 742, that only the judge's finding under Rule 54(b) was necessary to make the order reviewable. Such freedom from the confines of precedent is confusing not only to the public, but also to colleagues who have no notice of the impending doom before it appears in print.[16] It is made possible by the practice of this circuit never to sit *in banc,* as authorized by 28 U.S.C. § 46(c). though it does violate the precepts, recounted by Cotton Mather as agreed upon by the governor and magistrates, "that one magistrate shall not cross the proceedings of another, without first advising with him." Mather, Magnalia Christi Americana 121, 1855 Ed., quoted in 65 Harv.L.Rev. 113. On the exact point taken for decision, to wit that dismissal of an intervention petition after a trial on the merits cannot be final, the authorities seem fairly clearly the other way, as illustrated by either such an express ruling as Dickinson v. Petroleum Conversion Corp., supra, 338 U.S. 507, 70 S.Ct. 322,[17] or the analysis set forth in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541,

16. Nor is the blow softened by describing opprobriously a colleague's hard work as only "dictum."

17. The failure to cite this case seems all the stranger because it was a reversal of Dickinson v. Mulligan, 2 Cir., 173 F.2d 738, urged by the court itself because it held itself bound by what it considered the erroneous decision in Clark v. Tay-

lor, 2 Cir., 163 F.2d 940. Actually, however, the latter case dealt with an order dismissing one of two defendants alternately charged and expressly excepted the intervention situation with citations. 163 F.2d at page 943 and note 4. Of course one of the real advantages of the new rule is that it does away with the small distinctions of the earlier law.

69 S.Ct. 1221, 93 L.Ed. 1528, and followed in Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 689, 70 S.Ct. 861, 94 L.Ed. 1206, a result certainly more in line with what had been the court's previous views of policy in favor of greater appealability. The case relied on by the court as controlling was an admiralty case of 1883, Cushing v. Laird, 107 U.S. 69, 2 S.Ct. 196, 27 L.Ed. 391, which actually did not involve the claims of an intervenor, but only of parties; an outsider's claims were indeed urged, but only by the garnishees duly summoned in to defend and required to answer,[18] who were thus in a situation quite other than that of intervenors trying to force their way into a litigation. On its own level the case may therefore be questioned. But particularly because of the doubt it throws upon rule-making generally and upon a good and working rule, repudiation of it, as here, seems quite necessary.

---

18. This is stated in the Supreme Court report and made amply clear in the reports of the case below. Fed.Cas.No. 3509, 6 Ben. 408, and Fed.Cas.No.3510, 15 Blatch. 219.