**BENDIX AVIATION CORP. v. GLASS.**

No. 10470.

United States Court of Appeals
Third Circuit.

Argued June 21, 1951.

Reargued Dec. 7, 1951.

Decided Feb. 19, 1952.

Biggs, Chief Judge, dissented in part.

Charles C. Tillinghast, Jr., New York City, Dexter N. Shaw, Philadelphia, Pa. (Howson & Howson, Wilson Oberdorfer, Philadelphia, Pa., Richard W. Hogue, Jr., New York City, on the brief), for appellant.

Leonard L. Kalish, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the plaintiff from an order of the District Court for the Eastern District of Pennsylvania dismissing without prejudice the plaintiff's complaint which sought specific performance of certain acts which it alleged the defendant had agreed to perform. The order did not dispose of, but left pending for future determination, the defendant's counterclaim for damages arising from the same transactions. The order was entered upon the express determination by the district court that there was no just reason for delay and upon the express direction of the court for the entry of judgment thereon.

We are faced at the outset with the jurisdictional question whether the order here sought to be reviewed is a "final decision" which is appealable to this court under

Sec. 1291 of Title 28, United States Code.[1] The plaintiff points out that the order was entered as a final judgment in strict accordance with the provisions of Civil Procedure Rule 54(b), 28 U.S.C.,[2] and it argues that by virtue of the operation of that rule it must be regarded as a "final decision" within the scope of Sec. 1291.

As we have said the action in the district court involves multiple claims for relief, namely, a claim for equitable relief by the plaintiff in the complaint and a claim for damages by the defendant in the counterclaim. It is thus the type of action to which Rule 54(b) is directed. The order here appealed from was entered as a final judgment in strict accordance with that rule. If, therefore, the rule validly authorizes the entry of a "final decision" as that phrase is understood in Sec. 1291 the order here in question is appealable and this court has jurisdiction to hear and determine it. Our jurisdiction accordingly turns on the scope and validity of Rule 54(b).

Rule 54(b) in its present form was adopted December 27, 1946, effective March 19, 1948. It superseded Rule 54(b) as originally adopted which had authorized the entry of judgment on one of the claims in an action involving multiple claims when and only when the issues material to that claim and all counterclaims arising out of the same transaction or occurrence had been determined. The application in practice of this single transaction standard resulted in a good deal of confusion and the consequent uncertainty as to the appealable finality of judgments entered in multiple claims actions made necessary the taking of many precautionary appeals in doubtful cases. It was largely to eliminate this uncertainty and confusion that the amended rule was proposed and adopted.[3]

As the Supreme Court's Advisory Committee pointed out in its note to the Court on the amended rule, the latter was the result of the Committee's conclusion that the retention of the older federal rule which prohibited piecemeal disposal of litigation and permitted appeals only from final judgments was desirable and needed only the vesting in the district courts of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule.[4] We read that rule, as embodied in amended Rule 54(b), to be that in a multiple claims case the judgment which finally adjudicates all the claims is the only judgment having finality unless the district court in the exercise of its discretion expressly determines that there is no just reason for delay with respect to the entry of a final judgment upon a particular claim in the action and accordingly expressly directs the entry of a final judgment adjudicating that claim. In such case the rule says that "the court may direct the entry of a final judgment." This is language of grant not of restriction and it requires that the judgment thus entered on a single claim is to be regarded as just as final, so far as further revision by the district court is concerned, as though the claim thus adjudicated were the sole claim for relief embodied in a wholly independent action. For when such a judgment has been entered it may at once be enforced and executed,

1. "§ 1291. The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * * except where a direct review may be had in the Supreme Court."

2. "(b) Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

3. Dickinson v. Petroleum Conversion Corp., 1950, 338 U.S. 507, 512, 70 S.Ct. 322, 94 L.Ed. 299; Pabellon v. Grace Line, 2 Cir., 1951, 191 F.2d 169, 175.

4. Notes of Advisory Committee on Amendments to Rules, 28 U.S.C.A., Federal Rules of Civil Procedure, following Rule 54.

unless enforcement is stayed by the court under Rule 62(h).

If Rule 54(b) may validly be given this effect, which we read its language to require, it is conclusive in support of the jurisdiction of this court to entertain the present appeal. For such a final judgment would be a "final decision" of the district court within the meaning of Sec. 1291 and thus appealable. It is contended by the defendant, however, that Rule 54(b) cannot be given this effect but must be construed as merely having the purely negative effect of making non final and, therefore, nonappealable certain types of judgments in multiple claims cases which would have been regarded as final and, therefore, appealable under the old practice. The case of Flegenheimer v. General Mills, 2 Cir., 1951, 191 F.2d 237, is cited in support of this contention.[5] With all due respect to our brethren of the Second Circuit who joined in that opinion we cannot agree that the effect of Rule 54(b) must be thus narrowed.

The theses of those who support the decision in the Flegenheimer case are two. First they say that the language of Rule 54(b) itself requires that it be limited to the negative effect of making interlocutory and nonappealable judgments on single claims in multiple claims suits which do not embody the formula of the rule. We have already stated that we cannot so read the rule. Then they say that if read more broadly the rule would be invalid. Pointing out that a judgment which determined less than all of the claims arising out of the same transaction in a multiple claims suit would not have been appealable as a "final decision" prior to the Federal Rules of Civil Procedure, they say that to give Rule 54(b) the effect of making such a judgment final would be to extend the jurisdiction of the courts of appeals to judg-

ments not previously appealable and this would render the rule invalid as beyond the rule making power of the Supreme Court under the Enabling Act of June 19, 1934, c. 651, 48 Stat. 1064.[6]

It is unquestionably true that neither the Act of 1934 nor its successor, Sec. 2072 of Title 28, authorized the Supreme Court by the Federal Rules of Civil Procedure adopted under those statutes to alter the jurisdiction of the district courts or of the courts of appeals.[7] We also assume that a judgment which, as here, adjudicated the plaintiff's claim while leaving unadjudicated the defendant's counterclaim arising out of the same transactions would not have been regarded as a final appealable judgment prior to the amendment of Rule 54(b).[8] But it does not follow that the jurisdiction given to this court by Sec. 1291 has been altered because Rule 54(b) has made it possible for the district court to make final, and, therefore, appealable, a type of judgment which under the procedural rules previously in force was always subject to later revision in the district court and was, therefore, regarded as not appealable because it was interlocutory.

We have seen that Sec. 1291 makes all "final decisions" appealable. While the phrase "final decisions" is not defined in the statute it obviously refers to steps in the course of litigation in the district courts, steps which rise to the dignity of "decisions" and which are "final". What is an appealable decision within the meaning of Sec. 1291 has been the subject of much judicial discussion which we need not here review. Suffice it to say that there is involved the idea of a definitive judgment, order or decree determining something more than a mere procedural incident in a law suit and that a judgment definitively adjudicating a claim for relief in a civil

---

5. But see Pabellon v. Grace Line, 2 Cir., 1951, 191 F.2d 169, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, and Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 1951, 194 F.2d 422, to the contrary.

6. Now incorporated in 28 U.S.C. § 2072.

7. Sibbach v. Wilson & Co., 1941, 312 U.S. 1, 10, 61 S.Ct. 422, 85 L.Ed. 479.

8. See General Elec. Co. v. Marvel Rare Metals Co., 1932, 287 U.S. 430, 432, 53 S.Ct. 202, 77 L.Ed. 408; Winters v. Ethell, 1889, 132 U.S. 207, 210, 10 S. Ct. 56, 33 L.Ed. 339; Audi Vision, Inc., v. R.C.A. Mfg. Co., 2 Cir., 1943, 136 F.2d 621, 147 A.L.R. 574; Petrol Corporation v. Petroleum Heat & Power Co., 2 Cir., 1947, 162 F.2d 327.

action clearly comes within it. Whether a decision is final within the meaning of Sec. 1291 has also been the subject of a host of cases. It is settled that finality involves the termination of the litigation so that nothing remains but to execute the judgment or decree in question.[9] But this does not necessarily mean the termination of the entire law suit. For in the course of a judicial proceeding there may be one or more final decisions on particular phases of the litigation, reserving other matters for future determination.[10] A court of appeals in passing upon the finality of a district court judgment for purposes of appeal must necessarily look to the proceedings in the district court. And it must appraise the nature of those proceedings in the light of the procedural rules of the district court which give them meaning and effect. The jurisdiction conferred upon the courts of appeals by Sec. 1291 depends for its exercise upon the production of final judgments by the district courts in accordance with their procedural rules. When these rules have changed, the impact of Sec. 1291 has changed with them.[11] In this sense many of the procedural rules of the district courts unquestionably affect the jurisdiction of the courts of appeals under Sec. 1291.

Rule 54(b) is such a procedural rule.[12] As we have seen, its purpose is to provide an objective and mechanical way for determining when a judgment adjudicating a single claim for relief in a multiple claims suit is, and when it is not, to be regarded as final and not subject thereafter to revision by the district court. By providing that judgments stamped with its hallmark shall be final and not subject to revision and that those without the mark shall be interlocutory and subject to revision the rule indirectly and incidentally affects the jurisdiction of the courts of appeals by regulating the production of final decisions upon which the jurisdictional grant of Sec. 1291 may operate. The rule thus undoubtedly affects the amount of grist available from time to time for the appellate mill. But so do a number of the other Civil Procedure Rules which have been upheld as appropriate district court procedure. These include Rule 73(a) which shortened the statutory time for taking appeals and thereby deprived certain litigants of their right of appeal [13] and Rule 74 which abolished the principle previously observed by the Supreme Court [14] that it had no jurisdiction of an appeal by one party from a joint judgment against him and another party in the absence of summoms and severance.[15]

Moreover it is difficult to see why a rule permitting the entry of a final judgment at an early stage in a multiple claims action is any less procedural than one permitting the district court to delay the entry of such a judgment until the final stage. For the effect of Rule 54(b) upon a judgment in a multiple claims suit which would have been final and appealable before the adoption of the rule is to make it interlocutory and nonappealable merely by the failure to employ in its entry the formula prescribed by the rule. This negative operation of the rule certainly affects appellate jurisdiction just as much as its positive application but neither the court in the Flegenheimer case nor the defendant

9. Catlin v. United States, 1945, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911; 28 U.S.C.A. § 1291, Note 102.

10. Kasishke v. Baker, 10 Cir., 1944, 144 F.2d 384, certiorari denied 325 U.S. 856, 65 S.Ct. 1185, 89 L.Ed. 1976; Beneficial Industrial Loan Corp. v. Smith, 3 Cir., 1948, 170 F.2d 44, 49, affirmed sub nom. Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L. Ed. 1528.

11. Compare Reeves v. Beardall, 1942, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, and Collins v. Metro-Goldwyn Pictures Corporation, 2 Cir., 1939, 106 F.2d 83, with Sheppy v. Stevens, 2 Cir., 1912, 200 F. 946.

12. Winsor v. Daumit, 7 Cir., 1950, 179 F.2d 475, 477–478.

13. Ray v. Morris, 7 Cir., 1948, 170 F.2d 498; Hart v. Knox County, Tenn., 6 Cir., 1948, 171 F.2d 45; Smith v. Lehigh Valley R. Co., 2 Cir., 1949, 174 F.2d 592.

14. Hartford Accident & Indemnity Co. v. Bunn, 1932, 285 U.S. 169, 181, 52 S.Ct. 354, 76 L.Ed. 685.

15. Schaffer v. Pennsylvania R. Co., 7 Cir., 1939, 101 F.2d 369, 372.

here see any impropriety in this application of the rule. Nor are they concerned by the opportunity which the rule thus gives to the district court to postpone the exercise of appellate jurisdiction although they appear to regard it as a revolutionary idea to permit the court through the positive operation of the rule to accelerate the exercise of such jurisdiction.

We are not disquieted by either aspect of the rule. Surely a district judge is in an excellent position to determine from the standpoint of justice to the litigants the best time at which to terminate by final judgment the litigation with respect to a single claim in a multiple claims suit and thus to open the way to immediate appellate review and execution of the judgment.[16] And we do not think that his action in thus timing his final decision involves the determination of the jurisdiction of the court of appeals to any greater extent than would his action in fixing the date of trial or of the filing of his opinion or of the entry of judgment thereon. Nor do we doubt that Rule 54(b) is within the rule-making power of the Supreme Court for, as we have demonstrated, it really regulates district court procedure rather than appellate jurisdiction and its effect on the latter is but incidental and indirect.[17] The rule has the force of a statute.[18] We conclude that it operates to make the judg-

ment here sought to be reviewed a final decision which is appealable under Sec. 1291 of Title 28.[19] This conclusion makes it unnecessary to consider the plaintiff's contention that the judgment is appealable under Sec. 1292 of Title 28 because the dismissal of the complaint involved the refusal of the injunction prayed for therein. We accordingly come to the merits of the appeal.

The essential facts are these. The plaintiff instituted an action of an equitable character concerning rights in an invention, alleging that the device in suit was invented by the defendant while employed by the plaintiff under circumstances which caused the plaintiff to be entitled to exclusive property in the invention. It is alleged further that the defendant disclosed and assigned the original invention to the plaintiff and that a patent was duly applied for by the plaintiff. Subsequently the plaintiff desired to protect a certain embodiment of the disclosures of said invention by a divisional patent application as required by the rules of the Patent Office but the defendant refused to execute such application and other supporting papers as were necessary. The complaint prayed that the defendant be required to execute these documents and be restrained from dealing in any way with the invention as his own property. The answer denied any obli-

---

16. Moore's Commentary on the U. S. Judicial Code, 1949, p. 517: "Flexibility is introduced by giving the district court, which has first hand information as to the litigation and its progress, to determine that when one branch of it has been adjudicated it is or is not then ripe for appellate review."

17. Compare Mississippi Pub. Corp. v. Murphree, 1946, 326 U.S. 438, 445, 66 S.Ct. 242, 246, 90 L.Ed. 185: "Congress' prohibition of any alteration of substantive rights of litigants was obviously not addressed to such incidental effects as necessarily attend the adoption of the prescribed new rules of procedure * * *."

And see the excellent discussion of the background of Rule 54(b) and the history of the power of the Supreme Court to promulgate rules affecting appellate procedure contained in the concurring opinion of Judge Clark in Lopinsky v.

Hertz Drive-Ur-Self Systems, 2 Cir., 1951, 194 F.2d 422.

18. Winsor v. Daumit, 7 Cir., 1950, 179 F.2d 475, 477.

§ 2072 of Title 28 U.S.C., effective Sept. 1, 1948, which currently authorizes the Supreme Court to make rules of civil procedure, provides: "Nothing in this title anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

19. We do not think that this result is affected by Civil Procedure Rule 82 upon which the court appears to have relied in the Flegenheimer case. For that rule merely directs that the "rules shall not be construed to extend or limit the jurisdiction of the United States district courts". It does not even refer to the jurisdiction of the courts of appeals.

gation to perform the demanded acts without compensation but stated willingness to do so upon payment of fair compensation. In a counterclaim the defendant asserted that the assignment of his invention to the plaintiff was made under circumstances entitling him to compensation and demanded such compensation.

Thereafter the defendant moved to dismiss the original claim for equitable relief showing that since the institution of the suit he had executed and filed a divisional patent application in the form desired by the plaintiff covering the matter complained of, and that a divisional patent had issued and title thereto had become vested in the plaintiff pursuant to an assignment which the defendant had previously made. The plaintiff opposed this motion, asserting among other things that the defendant's acts were qualified by a continuing assertion of both an interest in the invention and a right to compensation. Thereupon the defendant filed a formal written statement "that he will not now or at any time seek of this or any other court any relief in respect to any matters of fact or law set forth in the Counterclaim and Answer to the Complaint or in respect to patents Nos. 2,488,771 and 2,535,914 [the patents in controversy] or the inventions claimed therein, other than money compensation or damages." After hearing on the motion, the district court concluded that the defendant had performed all acts as to which specific performance could have been ordered under the complaint and, inferentially at least, that the only issues remaining between the parties could be decided on subsequent adjudication of the counterclaim. Thereupon the court entered its order dismissing the complaint without prejudice, from which order the present appeal has been taken. We think that the order was rightly entered and should be affirmed.

The allegations of the complaint were directed solely to the refusal of the defendant to sign the papers required to prosecute the divisional patent application which was made necessary by the rules of the Patent Office. These allegations supported the plaintiff's prayer for specific performance of the defendant's obligation to sign those papers. However, after it appeared that the defendant had signed them and that the divisional patent had been issued in the plaintiff's name the need of the plaintiff for the specific performance which it had sought no longer existed. The plaintiff urges that the performance was not adequate since it was given by the defendant under a continuing claim of a right to compensation from the plaintiff. But this claim is the subject of the defendant's counterclaim for damages and does not involve an attack upon the plaintiff's title to the patents. It may, therefore, be fully adjudicated when the counterclaim is heard and decided.

The plaintiff also asserts its continuing need for the injunctive relief prayed for and, under its prayer for general relief, for an adjudication of its title to the patents. But there are no allegations whatever in the complaint that the defendant has encumbered, licensed, disposed of, or operated under the invention or threatened to do so or that he claims any title thereto, which would support these prayers for relief. Moreover by his solemn statement filed in the district court and upon which the court in part relied in dismissing the complaint the defendant would be estopped from asserting any right to or interest in the invention adverse to the plaintiff, except for money compensation or damages. That claim, as we have said, is the subject of his counterclaim and the controversy between the parties with respect to it may be determined in that pending proceeding. Hence nothing remains to be adjudicated under the complaint and it was, therefore, properly dismissed without prejudice.

The order of the district court will be affirmed.

BIGGS, Chief Judge (concurring in part and dissenting in part).

I must respectfully dissent from the views expressed by the other members of the court as to the merits of this case.

Glass was employed by Bendix under an "Employee's Agreement" as follows: "In part consideration of my employment by Bendix Aviation Corporation and/or any

of its subsidiary, controlled or associated companies, and of wages and salary to be paid me, I hereby agree to disclose promptly to my employer inventions conceived or developed by me, whether on the employer's time or my own time, during, the entire period of my employment by Bendix Aviation Corporation or any subsidiary or controlled or associated company, and which inventions are capable of use in any way in connection with the business during said period of Bendix Aviation Corporation or any of its subsidiary or controlled or associated companies; and for the same considerations I do hereby grant and agree to convey to Bendix Aviation Corporation or its nominee (and subsidiary or controlled or associated company) the entire right, title and interest, domestic or foreign, or such lesser interest as that Corporation at its option may in any particular case choose to accept, in and to each and all of said inventions, and I do further agree to sign all applications for patents, assignments and other papers and writings and to perform all acts necessary or convenient to make this agreement effective as to particular inventions."

I think there is little doubt but that an employment contract so worded implies a negative covenant that the employee will not hinder the employer's exploitation of an invention or encumber any invention made by the employee during his employment. Such a negative covenant ordinarily may be specifically enforceable against the employee.[1]

It is an inference to be fairly drawn from the pleadings, which at this stage of the case must be construed most strongly in favor of Bendix and against Glass, that, prior to the filing of the complaint, Glass asserted that he was entitled to all right, title and interest in the invention, both legal and equitable. He refused to execute an assignment of a divisional application of the Patent Office and this formed the

primary basis for the suit against him embodied in Bendix's complaint. But the prayers of the complaint prayed not only that Glass should execute the divisional application but also that he be enjoined "from *encumbering*,[2] licensing, disposing or operating under the * * * invention."

The complaint was filed on June 4, 1948. On August 9, 1948 Glass filed an answer and a counterclaim and demanded a jury trial. The substance of his answer and his counterclaim was that he was entitled to all right, title and interest in the invention, and, on an inconsistent theory, that Bendix owed him compensation for the invention if Bendix had acquired ownership of it.

Bendix filed a reply to the counterclaim which in effect denied the truth of Glass's allegations. On August 20, 1948 Glass filed an amended answer and counterclaim which in substance reiterated his prior allegations and on August 21, 1948 the court allowed the amendment as of August 9, 1948. On August 21, therefore, it was clear that Glass was still asserting that he was entitled to all right, title and interest in the invention, and that Bendix, if he could prove the allegations of its complaint, was entitled to specific performance of the terms of Glass's employment contract including the negative covenant hereinbefore referred to. Bendix's suit was in effect one to quiet title to the invention.

On October 1, 1948 Bendix moved to strike Glass's demand for a jury trial and thereafter, on November 9, 1948, Glass delivered to Bendix the executed divisional patent application. On November 9 Glass also offered to deliver to Bendix an executed assignment of the patent application but conditioned this offer on acknowledgement by Bendix of his, Glass's equitable rights in the invention. Glass's demand for a jury trial and his motion to dismiss the complaint were argued. The court below ruled against the demand for jury trial and denied Glass's motion to dismiss the complaint.

1. Bendix is a Delaware corporation. Glass was apparently employed at Teterboro, New Jersey. The suit at bar was brought in the Eastern District of Pennsylvania. It is not presently necessary to resolve any question of conflicts of law.

2. Emphasis added.

The court stated, Bendix Aviation Corporation v. Glass, D.C., 81 F.Supp. 645, 646, "In the present case the cause of action stated in the complaint, the remedy sought and the defenses pleaded in the answer, including the 'understanding and implied agreement' for compensation, create an issue which is as purely equitable as anything can be. It is whether the defendant can be compelled to specifically perform his side of the employment contract. This issue the defendant cannot transform into one at law merely by counterclaiming for money damages." Chief Judge Kirkpatrick went on to say, 81 F.Supp. at page 647, "On the other hand the issue raised by the counterclaim is at law—whether the plaintiff has broken a promise to pay the defendant money. If this breach of contract had not been pleaded as a defense, if the promise had been set out as a collateral agreement or as a collateral term of the employment contract performance of which was not necessary to entitle the plaintiff to relief, the issues could be severed and a separate jury trial awarded to the defendant upon his counterclaim. As it is, the facts upon which the counterclaim is based, if proof of them is offered as a defense, will have to be determined in the trial upon the equity issue." The trial judge also said that the defendant had sought to get the ground for equity jurisdiction out of the case by making a written offer to assign the patent and by then moving to dismiss the complaint on the ground that the cause was thus rendered moot. Chief Judge Kirkpatrick pointed out that Glass's offer to assign the patent was not an unconditional offer and that it was therefore unnecessary to determine whether an unconditional offer by Glass would have had the effect which he desired, stating " * * * it may be noted that tender after suit brought is not ordinarily a defense to the action but merely operates as a termination of liability for interest and costs accruing thereafter." The trial judge then observed that Glass's offer was made subject to payment by Bendix of compensation as claimed in the counterclaim coupled with what, in view of the pleadings, amounted to a complete denial of any obligation by Glass under the employment contract. The trial court ended by stating, "As made, it [the offer to assign the patent] clearly can have no effect whatever upon the status of the action."

On January 4, 1951, Glass filed another motion to dismiss the complaint, and on April 19, 1951, filed a motion for leave to file a statement supplementing the motion of January 4, 1951. This statement is an oddity in pleading and is as follows: "Without waiving any of the matters of fact or law set forth in the Counterclaim and Answer to the Complaint, and upon the understanding that defendant's following statement will not be construed by the Court as a waiver of or as in any way impairing defendant's claim for money compensation for patents 2,488,771 and 2,535,914 and/or for the inventions forming the subject matter thereof, which claim for money compensation is the subject matter of the Counterclaim filed in this action, defendant states that he will not now or at any time seek of this or any other court any relief in respect to any matters of fact or law set forth in the Counterclaim and Answer to the Complaint or in respect to patents Nos. 2,488,771 and 2,535,914 or the inventions claimed therein, other than money compensation or damages. John P. Glass, * * *."

The court below filed no further written opinion but there was extended discussion at a hearing held on May 7, 1951 and it is clear that Chief Judge Kirkpatrick came to the conclusion that the statement of April 19, 1951, quoted above, heavily relied on by the majority of this court in the conclusion upon the merits, was in the nature of an unconditional offer by Glass to assign the patent to Bendix.

I conclude that the court below and this court have overlooked an important issue in the instant suit. The complaint, answer, counterclaim and reply state a cause of action cognizable in equity, despite Glass's execution of the divisional application, his assignment of the patent and his statement of April 19, 1951. The complaint, viewed in the light of the answer and counterclaim—even if the present suit be judged strictly on the sufficiency of the

pleading—states a primary issue of law and fact; viz., whether Glass can be compelled to abide by the terms of his employment contract, including the negative covenant, hereinbefore referred to, which would prevent him from encumbering the invention in any way or from harassing Bendix in its exploitation. In other words, the issue here was and is whether Bendix is entitled to maintain an action for specific performance of its employment contract with Glass or whether Glass can compel Bendix to submit to a jury trial on the single issue of compensation or damages. By dextrous use of the statement of April 19, 1951 Glass has convinced the court below and this court that the suit at bar is cognizable only at law and that no issue of specific performance remains in the case. This, I think, is the fundamental error of the court below and of the majority of this court.

But even if I am wrong on this issue I cannot regard Glass's statement of April 19, 1951 as the equivalent of an unconditional offer by Glass to assign the patent to Bendix. In short, I think Chief Judge Kirkpatrick's first decision was correct and his second decision wrong. Glass's statement of April 19 commences with a declaration that he does not waive any matter of fact or law set forth in the counterclaim and answer to the complaint. It goes on to say that Glass will not seek any relief other than money compensation or damages as to any matters set forth in the counterclaim or answer. It appears, therefore, that the litigation is in substantially the same status as it was on November 30, 1948 when the court below filed its opinion quoted in part above. 81 F.Supp. 645. Glass's carefully drawn statement of April 19, 1951, with its meticulous hedging of both Glass's and Bendix's rights, does not render unconditional Glass's conditional offer to assign the patent. Glass does not say that he will look solely to Bendix in the instant suit to enforce any and all rights which he may have to the invention. He could have done this in a few simple words.

In addition the statement of April 19, 1951 is addressed to Bendix and must be viewed in the context of this particular law suit; *non constat* that if Bendix were to license another or others under the patents to manufacture, use and sell the devices, Glass could not or would not sue the licensee or licensees for compensation or damages. It may be argued that if the instant suit were decided in Bendix's favor it could intervene in such a proceeding and plead the former decree as an effective bar. I am far from sure that the former decree would so operate but, even if it did, Bendix nonetheless would be put to the trouble of further litigation in another law suit or law suits. An adjudication of the issue of compensation or damages can definitively settle only one of the issues here presented. Major rights of the parties will hang in the air and Bendix, if it is entitled to exploit the invention, may encounter great practical difficulty in doing so. I can perceive no valid reason why the court below should not resolve all issues raised by the complaint, answer, counterclaim and reply and grant Bendix, if it prove its case, appropriate relief in equity.

The fascinating problem presented as to the correct application of Section 1291 and Rule 54(b) and of Section 1292(1), namely when and under what circumstances a judgment is final and appealable, seems to have distracted the attention of the court from what I consider to be the principal issue of the instant case.

The courts have decided *in limine* complicated issues of law and fact which will be much clearer in definition after evidence has been received. If it should then appear that Bendix is not entitled to equitable relief, and that the sole issue is in reality one of compensation or damages, a jury trial would then be possible. Glass, at least at this stage of the proceeding, should not be granted summary judgment dismissing the complaint. The case at bar is fraught with fateful consequences for both Bendix and Glass and the title, legal and equitable, to very important disclosures are at issue.

I agree with Judge MARIS' reasoning in the majority opinion that the decree appealed from is a final decision within the purview of Section 1291, viewed in the

light of Rule 54(b) and I am also in accord with Judge HASTIE'S opinion that the order is appealable under Section 1292(1). I disagree with the decision on the merits. I would reverse the order appealed from and order the complaint reinstated.

HASTIE, Circuit Judge, for himself and KALODNER, Circuit Judge (concurring).

Judge KALODNER and I concur in the decision of the court that the judgment of the district court should be affirmed. However, we think that this court has jurisdiction of this appeal under Section 1292 (1) of Title 28, United States Code, not Section 1291 of Title 28 as the court holds.

Originally, this case was presented as an appeal under Section 1291 from a final decision of a district court. On rehearing it was urged, alternatively, that this is an appeal from an order which "refuses an injunction"; hence the order, if not a final decision, is nevertheless reviewable under Section 1292(1) which provides that an interlocutory order refusing an injunction is appealable to this court. In our opinion this alternative contention is sound. It enables us to agree that we have jurisdiction of this appeal. The court finds it unnecessary to consider this alternative basis of jurisdiction. We, however, must consider it since we think Section 1291 is inapplicable.

As concerns the present litigation, the enforced dismissal of plaintiff's claim, though without prejudice, was an effective denial of all relief for which plaintiff had asked. One of plaintiff's two specific prayers asked that defendant be restrained from dealing with an invention as his own property. In dismissing the claim the dis-

trict court necessarily decided that plaintiff was not entitled to that relief. In recognition of that aspect of the order of dismissal this court in the concluding paragraph of its opinion states our reasons for believing that plaintiff is not entitled to an injunction in this suit. Thus, we have a case within the normal conception of appeal from an order refusing an injunction as authorized by Section 1292(1) of Title 28.[1]

On the merits, Judge MARIS speaks for us.

But despite our vote for affirmance, it seems to Judge KALODNER and me that the question of the effect of Rule 54(b) on our jurisdiction under Section 1291 is of such importance that we should state in some detail our reasons for disagreeing with the opinion of the court on this point. The view to which we are persuaded has recently been elaborated in opinions expressing the thinking of a majority of the judges of the Court of Appeals for the Second Circuit.[2] Their reasoning considered, we are not sure that we can shed additional light upon the problem; but we are sure that in the effort and in the exposition of our minority views here, we can and shall avoid the heat generated elsewhere in connection with minority views on the other side of this question.

At the outset, it is conceded that the majority give us a simple working rule for the entertaining of partial appeals in cases involving "multiple claims". Hereafter, in any such case, within this circuit at least, if a district court says its order is a final judgment and says it in the talismanic language prescribed by Section 54 (b) of the Rules of Civil Procedure[3] the

1. General Electric Co. v. Marvel Rare Metals Co., 1932, 287 U.S. 430, 53 S. Ct. 202, 77 L.Ed. 408; Ward Baking Co. v. Weber Bros., 3 Cir., 1916, 230 F. 142; Drittel v. Friedman, 2 Cir., 1946, 154 F.2d 653. Contrast the more limited effect of the order involved in Morgenstern Chemical Co. v. Schering Corp., 3 Cir., 1950, 181 F.2d 160.

2. The opinion of Judge Learned Hand, for himself, Chief Judge Swan and Judge Augustus Hand, in Flegenheimer v. General Mills, 2 Cir., 1951, 191 F.2d 237,

and the separate opinion of Judge Frank in Pabellon v. Grace Line, 2 Cir., 1951, 191 F.2d 169, 176. The contrary views of Judges Chase and Clark appear in Judge Clark's opinion in Pabellon v. Grace Line, supra, and more recently have been elaborated in Judge Clark's separate opinion in Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 1951, 194 F.2d 422. Judge Medina did not sit in any of these cases.

3. "Judgment Upon Multiple Claims. When more than one claim for relief is pre-

order is an appealable "final decision" within the meaning of Section 1291. Nothing more need be considered. But simple and attractive as this end result is, we are unable to surmount the obstacles which beset the path our brethren have travelled.

We all agree, as our earlier decisions have stated,[4] that Section 1291 of Title 28 is the source of our appellate jurisdiction and that our problem here is whether a particular order of the district court is a "final decision" within the meaning of Section 1291. We also agree that until the adoption of the present Rule 54(b) the order here presented for review would not have been a final decision within the meaning of Section 1291. Now, however, by force of that Rule the court decides that Section 1291 embraces what it did not embrace before. The court rationalizes and minimizes the effect thus claimed for Rule 54(b) by saying that the jurisdiction given this court by Section 1291 has not been altered but that the Rule has changed the impact of Section 1291. There has never been any more to the conception of final decision under Section 1291, it is argued, than a requirement that an order not be subject to revision by the trial court and that it be capable of immediate enforcement by execution or otherwise. All along the vice which made an order unappealable under Section 1291 was that actually, or in legal contemplation at least, the district court had not finished even with the part of the suit covered by the order. When Rule 54(b) provided procedure definitive of the completion of a portion of the litigation then, for the first time, such partial decision came to meet the unchanged standard of Section 1291.

We think this is too narrow a view of the meaning of Section 1291. It is true that one effect of the statute has been to preclude appeal where the order in question is subject to revision. But the statutory concept and its effect have been broader.[5] Generally, and we think correctly, Section 1291 has been thought to reflect a policy against the waste of time of appellate courts and against other evils inherent in the piecemeal presentation of related issues for review. It is obvious that multiple appeals in a single suit are likely to compel the reviewing court to go over much ground more than once. And even if this is avoided, there is the equally serious danger that on partial appeal issues may not appear as clearly or in the same perspective as when the whole litigation is reviewed. It was arguable as a matter of first impression that Section 1291 carried this policy so far that any appeal was precluded until the whole litigation was finished in the trial court.[6] But the Supreme Court in its construction of the statute occasionally found a portion of a law suit so distinct from the rest that the normal dangers of partial appeal were not present; where both in logic and in terms of the policy of Section 1291 that portion of the litigation might be reviewed as if it were a separate law suit. But these exceptions were few. And they were recognized cautiously in cases where the result seemed clearly consistent with the fundamental policy of Section 1291.[7]

sented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. * * *"

4. E. g., Cohen v. Globe Indemnity Co., 1941, 120 F.2d 791; Canister Co. v. National Can Corp., 1947, 163 F.2d 683.

5. Catlin v. U. S., 1945, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911; Collins v. Miller, 1920, 252 U.S. 364, 40 S.Ct. 347, 64 L.

Ed. 616; Ex parte National Enameling & Stamping Co., 1906, 201 U.S. 156, 26 S.Ct. 404, 50 L.Ed. 707; Hohorst v. Hamburg-American Packet Co., 1893, 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443.

6. Countervailing special considerations of policy have resulted in the allowance of appeal from specified interlocutory orders under Section 1292 of Title 28. They are not relevant to the present argument.

7. Withenbury v. U. S., 1866, 5 Wall. 819, 18 L.Ed. 613; Hill v. Chicago & Evanston R. R. Co., 1891, 140 U.S. 52, 11 S.

On the other hand, if there was one situation where the restrictive policy embodied in the statute clearly precluded partial appeal, it was the case where plaintiff's claim was opposed by defendant's "compulsory counterclaim".[8] The case before us is a prime example. The plaintiff's claim asserts rights of equitable character which he thinks he has against the defendant in relation to a particular invention as a result of certain acts and relationships of the parties. Defendant's counterclaim asserts his alleged rights of legal character against plaintiff in connection with the same invention and as a result of the same acts and relationships. Whether there may be particular bits of evidence relevant to the claim and not the counterclaim, or vice versa, does not appear but does not matter. Essentially the same circumstances are the factual basis of both claim and counterclaim. The likelihood of pointless redundancy in such separate appeals on claim and counterclaim arising out of the same transaction was clear. Therefore, whether the district court had finished with the claim or not was immaterial. For until the counterclaim also was decided, adjudication was not comprehensive enough to amount to final decision within the meaning of Section 1291.[9]

Thus, we differ with the majority in our view that it was the quantum of litigation covered by partial decision in the claim-compulsory counterclaim situation beyond any possible deficiency of procedure in connection with the matter decided which resulted in the rule of non-finality until both claim and counterclaim had been adjudicated.

This conception of final decision continued after the Rules of Civil Procedure were adopted in 1938. Rule 54(b), as then enacted, recognized that an order disposing of a particular claim while a counterclaim "arising out of the [same] transaction" remained pending did not cover enough to constitute a final judgment. Such an order remained unappealable.[10]

At the same time, because more diverse matters could be brought together in one action under the new Rules than theretofore, the 1938 Rule 54(b) undertook to describe possible units of judicial action so distinct from the rest of the litigation as properly to be the subject of review before completion of the entire litigation. Apparently it was the intention of the draftsmen to respect the conceptions underlying adjudications which had defined "final decision" in the administration of Section 1291 before the liberalization of joinder.[11] For although language of the Supreme Court not essential to the disposition of issues before the court at times had suggested that any partial disposition of an action lacked the coverage contemplated by Section 1291,[12] actual adjudication before 1938 had recognized, as we already have indicated, the appealability of certain obviously integral portions of an action less than the entire litigation. It is not surprising, therefore, that after the adoption of the original Rule 54(b) the Supreme Court explicitly recognized "* * * a judgment * * * which terminates the

Ct. 690, 35 L.Ed. 331; United States v. River Rouge Improvement Co., 1926, 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339. Compare Dickinson v. Petroleum Conversion Corp., 1950, 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299.

8. The terminology now used in Rule 13 of the Federal Rules of Civil Procedure, 28 U.S.C., to describe a situation long familiar in pleading.

9. General Electric Co. v. Marvel Rare Metals Co., 1932, 287 U.S. 430, 53 S. Ct. 202, 77 L.Ed. 408; Winters v. Ethell, 1889, 132 U.S. 207, 10 S.Ct. 56, 33 L.Ed. 339; Ayres v. Carver, 1854, 17 How. 591, 15 L.Ed. 179. And see references to this antecedent doctrine in cases cited in note 10, infra.

10. Nachtman v. Crucible Steel Co., 3 Cir., 1948, 165 F.2d 997; Eastern Transport Co. v. U. S., 2 Cir., 1947, 159 F.2d 349; Toomey v. Toomey, 1945, 80 U.S. App.D.C. 77, 149 F.2d 19. Accord: Coffman v. Federal Laboratories Inc., 3 Cir., 1948, 171 F.2d 94. Cf. Cohen v. Globe Indemnity Co., 3 Cir., 1941, 120 F.2d 791.

11. See Moore, Judicial Code Commentary (1949) 510–11.

12. E. g., Collins v. Miller, 1920, 252 U.S. 364, 370, 40 S.Ct. 347, 64 L.Ed. 616.

action with respect to such a claim [including any compulsory counterclaim] * * is final for purposes of appeal under § 128 [now Section 1291] of the Judicial Code".[13] Since this case, Reeves v. Beardall, is thought by the majority to lend support to their position, it seems desirable to state explicitly that it does not overrule any earlier decisions of the Court on the nature of final decision. Rather, in a situation which it had not considered before, the Supreme Court applied a conception of an appealable unit of litigation which was consistent both with the rationale of its earlier decisions construing Section 1291 and with the Rules newly enacted in connection with the liberalization of joinder. In contrast, the present case discloses an old and familiar situation of claim and counterclaim with reference to the same transaction. Within this quantum of litigation disposition of less than all of the closely related opposing requests for judicial action has not heretofore constituted final decision under Section 1291; and if it does so now the meaning of Section 1291 in relation to old and familiar subject matter has been changed.

The present Rule 54(b) is an entire redraft adopted in 1948. It undertakes a new approach to finality in the disposition of one of several claims presented in an action. An express special finding that "there is no * * * reason for delay" in the entry of judgment and "an express direction for the entry of judgment" by the district court are required as the hallmarks which must appear before an order which disposes of less than all of the claims in suit can be a final judgment. An obvious purpose of this new requirement is to provide such measure of certainty concerning appealability as is afforded by assurance that without these findings a partial disposition of a law suit is on its face incomplete and will not be appealable.[14]

The court reasons that there is no significant distinction between this negative effect—which all of us concede—of a district court's failure to comply with Rule 54(b) in postponing any Section 1291 final decision and the affirmative effect of converting into a Section 1291 final decision an order the Supreme Court has said is not of that character. In this same connection the court points out that every day district courts necessarily accelerate or postpone final decisions by promptness or delay in entering judgment upon trial findings and opinions. But this very example illustrates just the distinction which we already have stressed. When we speak of such procedural steps as postponing or accelerating final decision, it is our unspoken premise that, procedure apart, the adjudication covers such subject matter as is comprehended by the phrase "final decision" in Section 1291. In other words, two things are necessary for such a final decision. The district court must take all the steps necessary to complete its action with reference to the claim and, in addition, the subject matter litigated must have scope enough to satisfy the statutory conception of final decision.

Thus, the court's analysis of Rule 54(b) as procedural in the sense of changing the time when an order is appealable is beside the mark. Litigated cases characteristically involve numerous challenged rulings made before final decision, however defined. To call any such ruling itself a final decision within the meaning of Section 1291 would, of course, change the time of appeal. But in this case it would also change the quantitative conception under which final decision must include disposition of both claim and compulsory counterclaim, whether by one order or two, and whether the orders, if two, are entered simultaneously or at different times. This distinct and additional effect which the court now gives to Rule 54(b) involves serious difficulties which, as we see it, the proponents of the majority view do not resolve.

---

13. Reeves v. Beardall, 1942, 316 U.S. 283, 285, 62 S.Ct. 1035, 1087, 86 L.Ed. 1478.

14. Lyman v. Remington Rand, Inc., 2 Cir., 1951, 188 F.2d 306; David v. District of Columbia, 1950, 88 U.S.App.D.C. 92, 187 F.2d 204; Winsor v. Daumit, 7 Cir., 1950, 179 F.2d 475.

It is at least a novel conception of judicial power which enables a court of first instance in its discretion from case to case to determine whether its orders are sufficiently inclusive to be of appealable character. The conception is the more remarkable in this case because it involves authority to change the meaning of a statute at will and in the process to ignore the Supreme Court's prior construction of that statute. Whether district courts of the United States organized and authorized solely to exercise certain original jurisdiction comprehended within the judicial power of the United States under Article III of the Constitution can exercise such a function is at least unclear.

Moreover, this sport in judicial power would derive from a mere rule of district court procedure. The Supreme Court has pointed out that the enabling act [15] under which the present rules were adopted "was purposely restricted in its operation to matters of pleading and court practice and procedure" leaving undisturbed "the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute".[16]

It is true that the rules derive authoritative character from Supreme Court sanction. It is also true that in final analysis it is the Supreme Court which in the course of adjudication from case to case lays down the principles and precepts which give authoritative construction and systematic meaning to the statutory concept of appealable final decision. But it would be something else for .the Court to undertake the alteration of this statutory concept of appealability through the promulgation of rules of district court procedure. Such a course would at least represent a departure from conventional and judicially approved notions of the nature and respective roles of legislation, adjudication and rule making.[17]

Although the opinion of the court does not analyze these difficulties, we think there is implicit recognition of their substantiality in the repeated denials by the draftsmen of the present Rules and the courts alike, including this court in this case, that the Rules generally or, 54(b) in particular, have any purpose or effect to enlarge judicial power or modify appellate jurisdiction.[18] This is a reasonable inter-

---

15. 48 Stat. 1064 (1934).

16. See Sibbach v. Wilson & Co., 1941, 312 U.S. 1, 10, 61 S.Ct. 422, 424, 85 L.Ed. 479; Cf., Mississippi Publishing Corp. v. Murphree, 1946, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185; Meek v. Centre County Banking Co., 1925, 268 U.S. 426, 45 S. Ct. 560, 69 L.Ed. 1028.

17. Cf., Davidson Bros. Marble Co. v. U. S. ex rel. Gibson, 1909, 213 U.S. 10, 18–19, 29 S.Ct. 324, 53 L.Ed. 675; Hudson v. Parker, 1895, 156 U.S. 277, 284, 15 S.Ct. 450, 39 L.Ed. 424; both cited in support of the language of Sibbach v. Wilson & Co., supra, note 16. For the contrary view of a chief architect of the new rules, see Moore, Judicial Code Commentary (1949) 516–17.

18. See Audi Vision, Inc., v. R.C.A. Mfg. Co., 2 Cir., 1943, 136 F.2d 621, 624, 147 A.L.R. 574; Hunteman v. New Orleans Public Service, Inc., 5 Cir., 1941, 119 F.2d 465, 466; 3 Moore Federal Practice (1st ed. 1938) 3155. Particularly noteworthy is the note of the Advisory Committee on Rule 54(b), 28 U.S.C.A. Federal Rules of Civil Procedure, page 118, stating the draftsmen's conception that the "historic rule in the federal courts [which] has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments" should be retained "and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule". And with optimism concerning the results of their highly competent labors they add "This is afforded by amended Rule 54(b) which re-establishes an ancient policy with clarity and precision". Whether in the light of subsequent events this is an over-estimation of the potential of a few words however well chosen for the simple solution of such a problem as this or an under-estimation of the capacity of judges for obfuscation, it is significant of the limited effect intended for the new rule.

The note is further significant in its revelation that experience with the earlier form of Rule 54(b) had shown a tendency to employ the rule, contrary to its intention, to enlarge the field of appeals from partial judgments not final under precedent conceptions. The new rule was conceived restrictively to avoid this consequence of its predecessor.

pretation. It may well be a necessary one.[19] We would give it effect by refusing to read into Rule 54(b) the purpose or effect of empowering a district court to make an order partially disposing of an action a final decision when it does not decide enough to meet the requirements of Section 1291 as authoritatively construed. This restrictive interpretation would leave unimpaired the usefulness of Rule 54(b) which derives from its above mentioned negative effect. The rule would be left to serve a very valuable purpose, and apparently its principal intended purpose. It would relieve litigants of the risk of losing their right of appeal which heretofore has resulted from failure to take an immediate appeal from a partial disposition of an action under the mistaken belief that the order was not a final decision. For now, regardless of what an order must comprehend to have the scope essential to finality under Section 1291, it would not meet the procedural requirements of Rule 54(b) unless the district court had formally directed the entry of judgment and unless the court had made explicit what would normally be implicit in any attempted partial final judgment; namely, that there was in the view of the trial court no reason of fairness or administrative convenience for retaining jurisdiction over this adjudicated segment of the litigation until the entire action could be adjudicated and its disposition viewed as a total picture.[20]

Finally, we have noted but do not share the fears of our brethren and others that our view, if adopted, would jeopardize many other sections of the new Rules. Without burdening this opinion with an elaborate catalog of rules, it seems to us that nothing is claimed for other rules which presents difficulties equivalent to those encountered when Rule 54(b) is given the effect claimed for it in this case. There is, of course, a normal and proper effect which many rules exert upon appeals as a necessary consequence of their regulation of procedure in the district court. Rule 54(b) is effective in the same way. It is only the questionable additional effect

which we would avoid by our construction of the Rule.

Summarizing our analysis of the matter in question, it seems to us that there is a quantitative conception of final decision, as distinguished from the new procedural steps and policy findings in the district court now prerequisite for the entry of finally dispositive partial judgment, for which we must continue to look to Section 1291 as authoritatively construed. A finding of a district court that no just cause exists for delaying partial judgment, such as was made in this case, does not of its own force and without regard to the coverage of the dispositive order make a "judgment" entered pursuant thereto appealable, whatever the considerations may have been which induced the district court's conclusion. At most such considerations might have effect in persuading the Supreme Court to reconstrue Section 1291 and recognize some hitherto unformulated exception to the present general rule against partial appeals. But it is not our function to declare such exception in a situation where neither the holdings nor the reasoning of the Court in construing Section 1291 seem to permit it.

19. Flegenheimer v. General Mills, supra, note 2. This holding was anticipated by comments of Judge Frank in Clark v. Taylor, 2 Cir., 1947, 163 F.2d 940, 951 note 12.

20. See cases cited in note 14, supra.