**BENDIX AVIATION CORPORATION,**
Plaintiff

v.

**John P. GLASS, Jr., Defendant and Counterclaimant.**

No. 8592.

United States District Court
E. D. Pennsylvania.
July 22, 1959.

C. Brewster Rhoads, Dexter N. Shaw, Philadelphia, Pa., for plaintiff.

Leonard L. Kalish, Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This action began on June 4, 1948, with a complaint by Bendix for a declaratory judgment. The controversy out of which it arose and an account of the early procedural steps are set forth concisely in Judge Maris' opinion in 3 Cir., 195 F.2d 267, at pages 272 and 273, 38 A.L.R.2d 356, and need not be repeated here, except to say that this Court dismissed the complaint on May 7, 1951, (an order subsequently affirmed by the Court of Appeals) and that, since that time, the only part of the action which has survived is the claim for money damages asserted by the defendant, Glass, in his counterclaim.

On the same day on which the complaint was dismissed, the defendant ordered his counterclaim on the trial list, and as a result it was listed for trial on November 26, 1951. Some time prior to that date the Court continued the case for the reason that the Court of Appeals had ordered a reargument of its decision affirming this Court's dismissal of the complaint.

In cases deferred for this or similar reasons, it was the clerk's practice not to relist the case for trial until the reason for deferment had come to an end.

On March 10, 1952, the mandate of the Court of Appeals, finally affirming this Court's order of dismissal of the complaint, came down and it was to be expected that in the normal course of things the clerk would restore the counterclaim to the active trial list without the necessity of any action on the part of the defendant. However, for some reason this was not done. Shortly before August 27, 1953, the clerk, in the course of making up the trial list for the following October, notified counsel for the counterclaimant that the case would appear on the list about to be published. He was advised by the counterclaimant's attorney that the case was "not ready for trial" [1] and refrained from placing it on the active trial list.

Thereafter, for more than four and a half years, or until February 6, 1958, the case lay dormant. It did not appear upon any of the numerous trial lists published during that period and the counterclaimant's counsel made no effort to see to it that it did or to find out why it did not.

On February 6, 1958, the counterclaimant once again ordered the case on the

1. The above finding does not involve the slightest suggestion that Mr. Kalish in his testimony was anything but honestly mistaken. However, it is clear that he relied very largely upon his office record of telephone calls. It is quite possible that he may have called from his home or some other place or been personally in the clerk's office without remembering it, and I cannot explain the clerk's positive act in noting the request on his calendar card on any ground other than that he was so notified.

trial list[2] and at the same time filed a motion that the case be not deemed abandoned. The plaintiff opposed this motion but argument upon it was postponed from time to time awaiting the decision of the Court of Appeals in a similar case (Ordnance Gauge Co. v. Jacquard Knitting Machine Co., 3 Cir., 1959, 265 F.2d 189).

The present case appeared upon the preliminary call list which was called on January 16, 1959, at which time the case was marked "ready" at counterclaimant's direction.

On February 19, 1959, the Court of Appeals having filed an opinion in the Ordnance Gauge case which pointed out that, although the Two Year Rule could not be invoked, a motion to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., was available, the plaintiff filed this motion under 41 (b).

 It is well settled that a dismissal of a case for want of prosecution under Rule 41(b) is largely a matter for the discretion of the trial court. In the Ordnance Gauge case, supra, the Court of Appeals affirmed the action of this Court in dismissing the case, but the Court of Appeals did not go so far as to say that a refusal to dismiss would have been error.

There certainly are many points of similarity between the situation in the Ordnance Gauge case, supra, and that presented here. However, there are also some important points of difference. In the Ordnance Gauge case the plaintiff, having filed his complaint, did absolutely nothing for a period of approximately five and a half years, knowing full well that the case could not be tried until it was ordered upon a trial list. Thus, his inaction blocked the operation of the ordinary court machinery by which the case could have been reached for trial in two or three years at the most.

 In the present case the counterclaimant ordered his case (that is the counterclaim) down for trial promptly. Thereafter it was deferred by the Court for some ten months for a proper reason—a postponement in no way chargeable to the counterclaimant. Beginning in March 1952 the counterclaimant's attorney had a right to expect (at least for a reasonable time) that the case would without action on his part be restored to the trial list by the clerk. As a matter of fact, it was on the point of being restored and would have been had he not advised the clerk that he would not be ready for trial. The result was that the clerk, instead of putting the case on the trial list so that it would come up for trial on the following list, kept it off the list, with other "deferred" cases. Thus, the only thing the counterclaimant in this case did which would operate to postpone the case was to notify the clerk, on August 27, 1953, that he was not ready for trial. In so doing, he had no reason to think that he was doing more than keeping it off one trial list or that it would not automatically appear on the list after that.

It seems to me that the question is, How soon should a party realize that the machinery of the court, which moves cases along for trial, is not working properly and that the trial of his case will in all probability be indefinitely deferred unless he does something about it?

Here, as soon as the counterclaimant learned through the Two Year notice that his case was in danger of dismissal, he ordered it for trial the second time and has not been in default in any way since. Although this is not strictly a case of a default judgment being asked for, the same general principles can well guide the Court in exercising its discretion. These principles are well stated in Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242, 245:

2. The counterclaimant was impelled to take this action by the receipt of a notice from the clerk that the case would be dismissed under a local rule known as the "Two Year Rule". It is agreed by both parties that the Two Year Rule was improperly executed and that the case could not have been dismissed under its provisions.

"Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. Henry v. Metropolitan, D.C.Va.1942, 3 F.R.D. 142, 144. Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on the merits. Huntington v. American, D.C.Va.1945, 4 F.R.D. 496, 498; Standard Grate Bar Co. v. Defense Plant Corp., D.C.Pa.1944, 3 F.R.D. 371, 372. Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments."

On the whole, I think that it would be an unduly harsh ruling to dismiss this case for want of prosecution.

The motion to dismiss the counterclaim is denied, and the counterclaimant's application that the case be not deemed abandoned is granted.