INTERNATIONAL TERMINAL OPER-
ATING CO., Inc., Plaintiff-
Appellant,

v.

WATERMAN STEAMSHIP CO.,
Defendant-Appellee.

No. 243, Docket 25429.

United States Court of Appeals
Second Circuit.

Argued June 4, 1959.

Decided Nov. 10, 1959.

Lumbard, Circuit Judge, dissented.

White & Case, New York City (John M. Johnston, New York City, of counsel), for plaintiff-appellant.

Gay & Behrens, New York City (Edward J. Behrens, New York City, of counsel), for defendant-appellee.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

This case presents an unusual question under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950. Plaintiff is a stevedoring concern. On April 23, 1951, Francesco Mancino, an employee of plaintiff's predecessor, Jarka Corporation, was injured while unloading defendant's vessel, the S.S. Bienville. Jarka made compensation payments to Mancino without award.[1] Mancino then commenced an action against defendant in the New York State Supreme Court. While this action was pending Jarka notified defendant that it had made compensation payments to Mancino and that it would look to defendant for reimbursement for the amount of such payments should Mancino obtain a judgment against defendant or should the litigation be settled. Pursuant to a plan of settlement devised by the judge before whom Mancino's claim was tried, on March 20, 1953 a judgment was entered against defendant and a check for the amount of that judgment was immediately paid over to Mancino.

Plaintiff filed an action for reimbursement against defendant in October 1956 in the New York Courts and the action was removed to the Southern District of New York. Plaintiff has asserted that it had an "equitable lien" on any judgment or settlement to the extent of the compensation payments it made prior to such judgment or settlement, that defendant had been notified of the existence of this "lien," and that therefore defendant, by its act of paying over the entire judgment to Mancino had, despite the "lien," converted that portion of the judgment equal to plaintiff's compensation payment. In an unreported opinion Judge Noonan dismissed the complaint on December 30, 1957.[2]

The parties agree as to the precise facts with respect to the settlement procedure required by the New York court. We feel called upon to remark that this procedure was, to say the very least, extraordinary. Mancino's case, heard without a jury, commenced on March 17, 1953. The following day, upon the completion of the presentation of Mancino's evidence, defendant moved to dismiss for failure to establish a prima facie case. The motion having been denied, defendant was prepared to begin a defense based upon the theory that Mancino's injury did not result from any unseaworthy condition of the vessel but instead resulted solely from the negligence

1. 33 U.S.C.A. § 914(a) provides that payments shall begin without award unless the employer contests his liability.

2. Defendant counterclaimed for the total amount of Mancino's judgment alleging plaintiff was obligated to indemnify it, claiming that Mancino's injury resulted from the negligence of Mancino's co-workers. The counterclaim has not yet been adjudicated. Judge Noonan's dismissal order of December 30, 1957 was appealed to this court. We dismissed the appeal for lack of a finding that there was no just cause for delay until the entire case could be adjudicated, a finding required by Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. International Term Operating Co. v. Waterman S.S. Co., 2 Cir., 1958, 255 F.2d 657. Judge Noonan modified the dismissal order to include this necessary finding on September 30, 1958. The entry of final judgment on plaintiff's claim for reimbursement, while postponing adjudication of the counterclaim, would seem to approach the limits of a district judge's discretion. Panichella v. Pennsylvania R. Co., 3 Cir., 1958, 252 F.2d 452; District 65, etc. v. McKague, 3 Cir., 1954, 216 F. 2d 153. But the action appears to be adequate under Rule 54(b) to support this appeal. Cold Metal Process Co. v. United Engineering & Foundry Co., 1956, 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311; Bendix Aviation Corp. v. Glass, 3 Cir., 1952, 195 F.2d 267, 38 A.L.R.2d 356; Omark Industries v. Lubanko Tool Co., 2 Cir., 1959, 266 F.2d 540.

of Mancino's fellow workers. The trial judge announced, however, that, irrespective of the merits of the defense, unless defendant would consent to a settlement for $17,500 at this stage of the trial defendant should expect that at the conclusion of the case judgment would be entered against it for an amount that would approximate $35,000. Defendant's trial counsel objected to the obvious impropriety of such a demand; but, after conferring with an officer of defendant, counsel acceded to the demand, well aware of the fact that the trial judge, as trier of fact, had power to bring his threat into actuality. Aware of Jarka's asserted "lien," the trial judge on the opening day of trial had directed defendant to communicate to Jarka the fact that settlement was imminent and that a Jarka representative should be present at court for any settlement conference. Defendant's counsel carried out the court's request, but an authorized official of Jarka replied that Jarka had no intention of being present, from belief that pressure would be exerted upon it to compromise its claim for reimbursement.[3] The following day, March 19, the trial judge ordered that defendant was to consent to judgment for $17,500 to be entered against it on March 20; defendant was to have a check for this amount in court to settle the judgment, and, in the meantime, defendant was to have no further communication with Jarka. In obedience to these explicit directions of the judge, all this was done on March 20.

█ We are called upon to decide, under the peculiar circumstances here present, what rights of reimbursement an employer may assert against the third party where the employer has notified the third party that it has made compensation payments and when the employee has thereafter obtained a judgment against the third party. The general

theory of the Longshoremen's and Harbor Workers' Compensation Act is clear enough. With exceptions not here relevant, an employee is entitled to compensation if he is injured on navigable waters of the United States and is not eligible for compensation under state law, 33 U.S.C.A. § 903. If his employer contests liability, and compensation payments[4] occur as the result of an award, any right of action against third persons whose negligence may have caused the employee's injury passes to his employer by way of constructive assignment. 33 U.S.C.A. §§ 914(a), 933(b). When this assignment occurs, and the employer is successful in an action against a third party, the amount by which the sum the employer recovers exceeds the amount of compensation payments it paid out must be turned over to the employee. 33 U.S. C.A. § 933(e). If, however, no award has been made, the employee may bring an action against third persons in his own right, 33 U.S.C.A. § 933(a); but there is no express statutory provision entitling an employer to reimbursement for compensation payments out of the sums so recovered by the employee. However, in keeping with the underlying principle of 33 U.S.C.A. § 933(e) that the employer is entitled to reimbursement for its compensation payments courts uniformly have permitted the employer to intervene in an employee's suit against a third person in order to assert a claim to that portion of any judgment so recovered equal to the amount of compensation payments. The leading case is The Etna, 3 Cir., 1943, 138 F.2d 37. See also Fontana v. Pennsylvania R. Co., D.C.S.D.N.Y.1952, 106 F.Supp. 461, affirmed Fontana v. Grace Line, 2 Cir., 205 F.2d 151, certiorari denied sub nom. Fontana v. Huron Stevedoring Co., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390; Ruggiero v. Liberty Mut. Ins. Co., 1947, 272 App.Div. 1027, 74 N.Y.S.2d 428, af-

3. In view of the doctrine in The Etna, 3 Cir., 1943, 138 F.2d 37, plaintiff's fears that it could be forced to reduce its claim for reimbursement appear to be groundless.

4. As used in this opinion the phrase "compensation payments" includes payments for medical services and supplies under 33 U.S.C.A. § 907 as well as payments under 33 U.S.C.A. §§ 908 or 909.

firmed 298 N.Y. 775, 83 N.E.2d 467;[5] and cf. Poleski v. Moore-McCormack Lines, D.C.Md.1958, 21 F.R.D. 579. The Etna holds that it would be improper for the employee to obtain double recovery by retaining that portion of the judgment that equals the amounts he has already received by way of compensation payments from his employer. This reasoning in no way supports the contention which appellant here advances. Appellant's *right* to reimbursement is not here in issue. The sole question here is whether an employer having that right, merely by notifying the party sued by its employee that compensation payments have been made, can shift to this third person the entire burden of protecting its right to a portion of any judgment or settlement. We leave open the question whether notification can have this result under normal circumstances.[6] We hold that, in the present case, in view of the fact that appellant does not dispute that appellee was ordered by a state court of competent jurisdiction to disregard the asserted claim of lien and to turn over the entire amount to the employee, plaintiff-employer must look only to its employee for satisfaction of its claim for reimbursement.

Judgment affirmed.

LUMBARD, Circuit Judge (dissenting).

I would reverse the order of the district court as the facts and the law do not support Judge Noonan's conclusion that International is estopped from recovering the amount of its compensation payments from Waterman Steamship Co., which it had duly notified.

There can be no doubt that under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., International, as Mancino's employer, was required by law to make payments to Mancino for medical expenses and compensation for loss of earnings following Mancino's injury in the course of unloading the S.S. Bienville, a vessel owned by the Waterman Steamship Co., on April 23, 1951.

Subsequently, on January 21, 1952, Mancino filed an election to sue the defendant, Waterman, as the third person allegedly responsible for the injury, and, on February 1, 1952, action was commenced in the Supreme Court of Kings County. To this action, neither International nor its predecessor, Jarka Corporation, was ever a party. However, on February 8, 1952, Jarka advised Waterman in writing of its payments to Mancino and notified Waterman that it would look to it for reimbursement of these monies pursuant to the Longshoremen's and Harbor Workers' Compensation Act "in the event a judgment is rendered or a settlement made."

Thereafter, on March 17, 1953, Mancino's action went to trial in the Supreme Court of Kings County. The Supreme Court justice, apparently exerting pressure on both sides to make a settlement,

---

5. As the Ruggiero case clearly recognized, the employer's rights to reimbursement for compensation payments made under the Longshoremen's Compensation Act is a matter to be determined exclusively by federal law. One reason for dissatisfaction with the reasoning of Jarka Corp. v. Fireman's Fund Indemnity Co., 1955, 286 App.Div. 148, 142 N.Y.S.2d 369 appeal denied 286 App.Div. 1003, 145 N.Y.S.2d 313, appeal dism'd 306 N.Y. 909, 131 N.E. 2d 908, a case purporting to decide the question which this opinion leaves open, is the fact that there the court rendered decision without reference to federal law.

6. We note that under present law the employer's right to reimbursement is well protected. Under the Etna doctrine he may intervene in his employee's action. Or he may obtain from his employee's attorneys an agreement that they will retain for him from any judgment an amount equal to his compensation payments. See Oleszczuk v. Calmar S.S. Corp., D.C.D.Md.1958, 163 F.Supp. 370, 371. As a third method of protection it is at least arguable that by virtue of 33 U.S.C.A. § 933(b) an employer, in order to protect its right of reimbursement, may postpone compensation payments until an award, even though 33 U.S.C.A. § 914(a) provides that payments should begin immediately unless an employer contests his liability.

directed Waterman's counsel to send word to Jarka to be in court the following morning "to discuss the problem of Jarka's rights." This word was conveyed to Jarka and Jarka refused to attend as it had a perfect right to do. What then followed is set forth in the affidavit of Waterman's counsel, as follows:

"On March 19, 1953, deponent appeared at about noontime before Mr. Justice ............ at a continuation of the trial. Being advised that Mancino would accept $17,500 and Waterman would pay that sum, Mr. Justice ............ directed how the case was to be terminated. He directed that, in behalf of the defendant, deponent consent to the entry of judgment in favor of Mancino for $17,500 without costs; that at the time of the entry of the judgment, deponent's firm would be prepared to deliver up a check in payment of the judgment in the amount of $17,500; that, simultaneously with the entry of judgment, Mancino's lawyers would deliver up a satisfaction of the judgment. Mr. Justice ............ directed deponent, as a member of the bar of the court, to have no further communication, directly or indirectly, with The Jarka Corporation or any of its employees about the matter until after judgment had been entered and satisfied." (Name of justice omitted.)

Waterman thereupon chose to follow the "directions" of the justice and a check for $17,500 in settlement of the case was turned over to Mancino in return for a satisfaction of judgment.

Judge Noonan has fittingly characterized the actions of the state court justice as "apparently improper activities of the trial court" and he further commented that these activities "put the defendant in an extremely awkward position vis-à-vis the plaintiff herein."

It is well settled that International, to the extent of the payments made, is subrogated to any rights that Mancino may have against the third party for the injuries on account of which the payments were made. The Etna, 3 Cir., 1943, 138 F.2d 37; Fontana v. Pennsylvania R.R., D.C.S.D.N.Y.1952, 106 F. 461, affirmed 2 Cir., 1953, 205 F.2d 151, certiorari denied, 1953, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390; Jarka v. Fireman's Fund Indemnity Co., 1954, 286 App.Div. 148, 142 N.Y.S.2d 369, appeal denied, 286 App.Div. 1003, 145 N.Y.S.2d 313, appeal dismissed 309 N.Y. 909, 131 N.E.2d 908; 33 U.S.C.A. § 933(b). It is also settled that the employer may invoke this right either by intervening in the suit between the employee and the third party, The Etna, supra, or as here, by a separate action against the third party, Jarka v. Fireman's Fund Indemnity Co., supra.

Obviously, the state court justice had no right to compel the presence of Jarka or to make any direction on the basis of Jarka's failure to appear and Waterman does not even contend to the contrary. Waterman does argue, however, that it had virtually no alternative but to follow the state court justice's directions. Of course, Waterman could not by any such decision nullify International's rights under the statute. Waterman had the choice of resisting a court order and judgment which may have been rendered by reason of such resistance.

Of course, it is quite possible that Waterman felt that settling the case for $17,500 and running the risk of whatever obligation it might still owe to International was the best result which it could obtain. But it would seem clear to me that no matter what Waterman did, it could not destroy the claim any more than the state court justice could properly prevail upon Waterman or anyone else to effect a settlement so as to destroy International's rights.

For these reasons, I would vote to reverse and remand with the direction to enter summary judgment for the plaintiff for reimbursement of $5,094.02 compensation payments regarding which International had sent notice to Waterman.

However, since the merits of Waterman's counterclaim against International for the $17,500 it paid Mancino have not yet been decided,[1] I would also direct that Waterman need not pay over the $5,094.-02 to International until the counterclaim has been determined.  Cf. Iravani Mottaghi v. Barkey Importing Co., 2 Cir. 1957, 244 F.2d 238, 260.

---

1. Waterman's counterclaim against International is based on a claim that International's failure to perform properly its stevedoring contract caused Mancino's injury and thus Waterman is entitled to the amount it paid Mancino, plus counsel fees, as the measure of damage flowing

from this breach of contract.  Cf. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co., Inc. v. Pan Atlantic Steamship Co., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.