**UNITED STATES LINES COMPANY as owner of the SS PIONEER MIST**

v.

**JARKA CORPORATION OF NEW ENGLAND.**

No. 63-8-G.

United States District Court
D. Massachusetts.

March 30, 1967.

Leo F. Glynn, Boston, Mass., for plaintiff.

Merritt J. Aldrich, Thomas D. Burns, Boston, Mass., for defendant.

## OPINION

GARRITY, District Judge.

Plaintiff United States Lines Company ("United States Lines") claims indemnification from Jarka Corporation of New England ("Jarka") due to its alleged failure to perform properly a stevedoring contract with the plaintiff. The complaint alleges that the plaintiff had been sued in the state courts by Henry A. Lynch, a longshoreman employed by Jarka, for injuries which he received while on board the plaintiff's vessel SS Pioneer Mist and that Lynch's claim was settled advantageously by the plaintiff for $3000; that Lynch's injuries were caused by Jarka's failure to perform its contract properly; and that Jarka owes the plaintiff the amount of the settlement and its expenses in defending the state court suit, plus interest and costs. Jarka filed a cross-libel in which it seeks reimbursement from the plaintiff for $1731 which it paid to Lynch under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 903.

I

*Plaintiff's Claim for Indemnification*

On the basis of evidence received at the trial, which for the most part was

undisputed, I find the following facts as to the plaintiff's claim:

1. The plaintiff's vessel SS Pioneer Mist was loading rolls of newsprint at Portland, Maine, on February 11, 1958 and Jarka was performing the services of a stevedoring contractor on board the vessel. Lynch, an employee of Jarka, was injured about 2:30 P.M. in the course of loading large rolls of newsprint on the vessel. Lynch was engaged in pushing two rolls of newsprint slung together and suspended by a hook when the load swung over, crushing him against a midship's bulkhead in the tank. On the day of the accident, the fall or cable was dry and kinky and not spooling properly on the winch drum; and slack turns developed. Coughlin, the winchman, complained to the mate and the bos'n on two to three occasions of this condition and asked them to oil the wire. Coughlin believed that the crew oiled the fall while he was on his lunch hour but on his return was not satisfied with the way it was working as the oil which had been applied to the fall did not have enough time to work through and penetrate it. When Lynch was injured the load was stopped in the square of the deep tank, the winches were stopped, and the controls were in neutral. Slack or riding turns had developed on the winch and they suddenly tightened, causing a corresponding drop of the load in the deep tank and crushing Lynch. Captain R. E. Thompson testified as an expert witness for the plaintiff and I accept his testimony that riding turns develop through a lack of oil on the fall; that they can be prevented; that the fall will spool properly and uniformly by slushing it with oil; and that it was proper stevedoring practice, customarily observed in Portland, Maine, to stop work immediately until riding turns are removed from the winch drum.

On the basis of the testimony of Lynch, Coughlin and Captain Thompson, I conclude that Jarka failed to perform properly the services of a stevedoring contractor on board the SS Pioneer Mist on February 11, 1958 and that the injuries sustained by Lynch were the proximate result of such failure.

2. The plaintiff sustained fractures of the upper ribs bilaterally, both scapulae, and the left coracoid process. His total period of disability was 19 weeks and 3 days. At the trial, the defendant conceded that Lynch's injuries were serious. He received $992.65 in compensation benefits. Based on his prior income tax statements, his loss of earnings during the period of disability would exceed $1600. United States Lines settled Lynch's claim before trial for $3000. In view of the nature of Lynch's injuries, his period of disability, and the attendant circumstances, I find that the $3000 settlement was reasonable.

3. Elmer E. Johnson, Esquire, a member of the Bar of Massachusetts and ocean marine manager for American Universal Insurance Company, testified that in his opinion a legal fee of $1200 incurred by United States Lines in defending against the suit brought by Lynch was fair and reasonable and I so find. In addition to the filing of the usual pleadings, interrogatories were filed and answered, the accident was investigated in Maine and closing papers were secured.

In conclusion, Jarka had actual or constructive notice of the unsafe and improper manner in which the winch was operating prior to Lynch's injury and was under an obligation to correct the condition. Its failure to do so was a breach of its warranty of workmanlike service and was the proximate cause of Lynch's injury. Under these circumstances, United States Lines is entitled to indemnity from Jarka for the amount it paid to Lynch in fair and reasonable settlement of his claim, American Export Lines, Inc. v. Revel, 4 Cir., 1959, 266 F.2d 82, and for the fair and reasonable attorney's fee of $1200 it incurred in defending the suit by Lynch. Shannon v. United States, 2 Cir. 1956, 235 F.2d 457.

## II

### Defendant's Cross-Libel for Reimbursement

With reference to Jarka's cross-libel in which it seeks reimbursement from the plaintiff for money paid to Lynch under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 903, the material facts are undisputed, as follows:

1. From February 15 to June 27, 1958 Lynch was paid benefits under that act totaling $1731, of which $922.65 were for temporary total disability and the remainder for medical benefits. The payments were made on behalf of Jarka by the Liberty Mutual Insurance Company ("Liberty Mutual") but were not made pursuant to an award. On September 22, 1958 notice was sent on behalf of Jarka to United States Lines advising of the payments made to Lynch for injuries suffered in the accident of February 11, 1958 and claiming a right to reimbursement out of any settlement that United States Lines might make with Lynch. On January 6, 1959 Lynch commenced an action against United States Lines in the Suffolk Superior Court for personal injuries.

2. United States Lines notified Jarka of the commencement of the action and requested that Jarka appear and defend the suit but Jarka did not appear. On April 25, 1961 Liberty Mutual wrote to the attorney for United States Lines, stating:

"Confirming the telephone discussion you and I had on Friday, April 21, 1961, please keep in mind the Company's lien in the amount of $1731 and see that this lien is protected when and if you consummate settlement of Henry Lynch's suit against your client, U. S. Lines Co."

3. Subsequently, United States Lines and Lynch, through their attorneys of record, agreed upon a settlement. United States Lines paid Lynch $3000 in full settlement and did not reserve for Jarka the $1731 upon which Jarka claimed a lien.

The issue raised in the cross-libel is whether an employer may obtain reimbursement from a shipowner who, having been notified that the employer made compensation payments to an employee, pays the employee full settlement of his personal injury claim against it. This precise question was left open in International Terminal Op. Co. v. Waterman SS. Co., 2 Cir., 1959, 272 F.2d 15, where the court held that the stevedore was not entitled to reimbursement from the shipowner where the latter had been ordered by a court to pay over to the longshoreman-employee the entire amount of his judgment against it without reserving for the stevedore amounts paid to its employee under the Longshoremen's and Harbor Workers' Compensation Act.

■ There is no express statutory provision in the act entitling an employer to reimbursement for compensation payments made pursuant to § 907 from the money recovered by an employee in his suit for damages.[1] It is settled, however, that the employer is entitled to be subrogated, to the extent of the payments made, to any rights that its employee may have against a third party for the injuries on account of which the payments were made. The Etna, 3 Cir., 1943, 138 F.2d 37. There are cases which describe the employer's right to reimbursement as "a lien on the proceeds" of the employee's recovery from a third party. Potomac Electric Power Company v. Wynn, 1965, 120 U.S.App. D.C. 13, 343 F.2d 295; Petition of Scheffield Tankers Corporation, N.S.Cal.1963, 222 F.Supp. 441. The third party who settled a claim with the employee was held, in Jarka Corporation v. Fireman's Fund Indemnity Co., 1955, 286 App.Div. 148, 142 N.Y.S.2d 369, 370, to be "equita-

---

1. When compensation payments are made pursuant to an award, the employee's right of action is assigned to the employer. 33 U.S.C. § 933(b). That sec-
tion does not apply here since no award was made under the act, Jarka not having contested its obligation to make compensation payments.

bly obligated" to hold back an amount to satisfy the employer's right to reimbursement.

■■ The employer's right to reimbursement is not here questioned; but whether it can shift to the third party the burden of protecting his right is another matter. The facts of a particular case, see International Terminal Op. Co. v. Waterman SS. Co., supra, as well as the purposes of the Longshoremen's and Harbor Workers' Compensation Act, must control. One purpose of the act was to assure the workers covered by it that they would receive a prompt and certain recovery. Pennsylvania Railroad Co. v. O'Rourke, 1952, 344 U.S. 334, 335, 73 S.Ct. 302, 97 L.Ed. 367. Another was to assure the employer that it would be reimbursed for the compensation which the act requires him to provide. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 412, 74 S.Ct. 202, 98 L.Ed. 143. A Senate Report relating to a 1959 amendment to the act, giving the employee the right to bring suit as well as receive compensation, stated:

"Although an employee could receive compensation under the act and for the same injury recover damages in a third-party suit, he would not be entitled to double compensation. The bill, as amended, provides that an employer must be reimbursed for any compensation paid to the employee out of the net proceeds of the recovery." S.Rep. No. 428, 86th Cong., 1st Sess. (1959). U.S.Code Cong. & Adm.News, p. 2135 (1959).

■ It is true in the instant case that United States Lines was notified on three occasions, by letter and telephone, that Jarka had made payments to Lynch and claimed a lien on the proceeds of any settlement. On the other hand, Jarka had notice of the suit by Lynch against United States Lines and was entitled to intervene in order to assert a claim to that portion of any judgment so recovered equal to the amount of the compensation payments. The Etna, supra. Jarka did not intervene nor in any way bring the matter to the attention of the state court nor seek to have an order entered requiring United States Lines to deposit with the court an amount equal to Jarka's lien. See Davis v. United States Lines Company, 3 Cir., 1958, 253 F.2d 262. Nor, so far as appears, did Jarka seek from Lynch's attorney an agreement that he would retain for it from any settlement or judgment an amount equal to the compensation payments. See International Terminal Op. Co. v. Waterman SS. Co., supra, n. 6. Jarka merely notified United States Lines that it had made payments to Lynch without submitting proof of those payments or of its liability to make them. In effect, Jarka endeavored to appoint United States Lines as its gratuitous trustee and pass to United States Lines the responsibility of protecting Jarka's interests.

■ In Jarka Corporation v. Fireman's Fund Indemnity Co., supra, the employer was awarded reimbursement from the third party tort-feasor who settled a claim by the employee with notice of the employer's claim. But in that case, as in International Terminal Op. Co. v. Waterman SS. Co., supra, the employer was not found to be liable for the employee's injuries. In this case Jarka has been found liable in part I of this decision for the injuries suffered by Lynch through its failure to properly perform its contract with United States Lines and, as a result, must indemnify United States Lines for the amount it paid Lynch in settlement plus the expense of defending against Lynch's suit. It would be inconsistent with United States Lines' right to indemnification to require it to bear the burden of the cost of Jarka's compensation payments to Lynch, especially where Jarka had notice and ample opportunity to intervene in Lynch's suit against United States Lines. By choosing to stay on the sidelines Jarka ran the risk of ultimate liability and the need to look to Lynch alone for

recovery of compensation payments made to him.

Judgment will be entered for United States Lines in accordance herewith both in the principal action and in the cross-libel.