**JARKA CORPORATION OF NEW ENG-
LAND, Defendant-Cross-Libelant,
Appellant,**

**v.**

**UNITED STATES LINES COMPANY,
Plaintiff-Cross-Respondent, Appellee.**

**No. 6981.**

United States Court of Appeals
First Circuit.

Dec. 1, 1967.

Thomas D. Burns, Boston, Mass., with whom Stephen N. Subrin, John F. Dobbyn and Burns & Levinson, Boston, Mass., were on brief, for appellant.

Richard A. Dempsey, Boston, Mass., with whom Leo F. Glynn and Glynn & Dempsey, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Lynch, a longshoreman employed by defendant stevedoring company, Jarka Corporation of New England, was injured while unloading a vessel belonging to the plaintiff United States Lines (hereinafter shipowner). Pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., Jarka, without an award, made workmen's compensation payments to Lynch in the amount of $1731. The shipowner was notified of these payments, and of a claimed right to reimbursement therefor out of any settlement it might enter into with Lynch. Subsequently, Lynch sued the shipowner in the state court, alleging that his injuries were caused by defective ship's equipment and negligent handling thereof. The shipowner notified Jarka of the institution of suit and requested that Jarka appear and defend, on the theory that the fault was Jarka's with the shipowner entitled to indemnity. Jarka's only reply was to state that it had a "lien" of $1731 against any recovery in the suit, and to demand that the shipowner protect that interest.

The shipowner eventually settled with Lynch, taking a release and an indemnification agreement described hereafter, and paying him $3000. It then brought the present suit in the district court, demanding indemnification in that amount from Jarka, who, in turn, cross-claimed for the $1731. On determining that the cause of the injury was Jarka's negligent failure to maintain the equipment, and that the $3000 was a reasonable settlement, the court found for the shipowner on its complaint. It dismissed the cross-claim on the ground that Jarka could not make the shipowner "its gratuitous trustee and pass to United States Lines the responsibility of protecting Jarka's interests" in the $1731—in other words, that Jarka was left to its own pursuit of Lynch. United States Lines Co. v. Jarka Corp., D.Mass., 1967, 265 F.Supp. 811, 815.

Jarka appeals the dismissal of the cross-claim. To this the shipowner offers two replies. The first is that it did retain the $1731, but need not pay it over to Jarka since the established right to indemnification would require that it be returned, thus resulting in a mere circuity of action. This claim necessarily rests upon a contention that the $3000 received by Lynch was a "net" figure, and that the settlement was actually for a gross sum of $4713. Were this the case, there would be merit to the shipowner's position. However, the district court found, "United States Lines paid Lynch $3000 *in full settlement* and did not reserve for Jarka the $1731 upon which Jarka claimed a lien." (Emphasis ours.) The accuracy of this conclusion is made clear by the terms of the release itself. The release did not merely recite that a settlement for $3000 was being made, leaving open the possibility that this was a net figure, but continued in a subsequent paragraph to provide that in the event of claims against the shipowner based on prior compensation, by which was quite apparently meant Jarka's claim for the $1731, Lynch agreed to indemnify the shipowner and hold it harmless. It could hardly have been more evident that the $3000 was a gross figure.

■ The shipowner's second contention, sustained by the district court, is that, conceding Jarka's right to reimbursement, the shipowner had no obligation to protect that interest. Under the circumstances we cannot agree. The shipowner is the plaintiff in this case, suing on a contractual right to indemnification. Yet at the time of the settlement it had in hand a portion of the very sum here sought, an amount which it knew Jarka claimed, and to which, it properly concedes, The Etna, 3 Cir., 1943, 138 F.2d 37, Jarka, as against Lynch, was ultimately entitled. To permit it deliberately to disadvantage Jarka by paying over this sum, and then expect recompense, would be "manifestly inequitable." Jarka Corp. v. Fireman's Fund Indemn. Co., 1955, 286 App.Div. 148, 142 N.Y.S.2d 369, 370, motion for leave to appeal dismissed, 309 N.Y. 909, 131 N.E.2d 908; cf. International Terminal Operating Co. v. Waterman Steamship Co., 2 Cir., 1959, 272 F.2d 15 (Lumbard, J., dissenting). While perhaps in theory the extent of Jarka's loss has not been increased by the shipowner's conduct, obliging Jarka to proceed over against Lynch has clearly served to place Jarka in a worse position with regard to the shipowner's claim. If the $1731 had been retained Jarka's proceeding against Lynch would not have been required.[1] The shipowner's duty, if it wanted relief from Jarka, was to minimize Jarka's difficulties, not maximize them. The principle involved is similar to that underlying the doctrine requir-

---

1. As a practical matter, the unlikelihood of Jarka's being able to recover the $1731 from Lynch in the instant case is evidenced by the fact that of the $3000 he received from the shipowner, $1500 went to his counsel as a fee for settling the case. If Lynch paid Jarka what he owed, or responded to his agreement to indemnify the shipowner, the net result to him of settling the lawsuit would be that he was $231 worse off than if he had never brought one.

ing mitigation of damages. Or, to speak in indemnity language, what the shipowner did, vis-a-vis Jarka, was comparable to releasing security. Cf. American Cas. Co. of Reading, Pa. v. Idaho First Nat'l Bank, 9 Cir., 1964, 328 F.2d 138.

This is not a case of the shipowner paying Lynch because Lynch was prima facie entitled to the money. Where the full settlement was for $3000, the $1731 included therein was either due over to Jarka or, by circuity, back to the shipowner. If it wanted to make a claim over against Jarka, it had two choices. It could pay $1269 to Lynch alone and $1731 by a joint check to Lynch and Jarka, then suing Jarka for $3000; or it could retain the $1731, then suing Jarka for $1269 and laying itself open to a cross-claim for the $1731. The one thing it could not do without suffering the consequences was what it did.

As a subsidiary matter Jarka complains that while on the court's findings it was properly obliged to pay the shipowner's legal expenses in defending Lynch's action, the fee found was excessive. The sole testimony on this subject came from an attorney, an insurance claims manager, called by the shipowner. Given its legal file, and asked to express an opinion as to the fair value of the services represented thereby, the witness estimated $1200, and the court so found. The complete file was not put into evidence.

If this direct examination was an improper short-cut procedure, Jarka did not object. Jarka contented itself with cross-examination which, while extensive, did not include inquiring of the witness whether this questioning had fully covered the detail of every item in the file. Even if arguably this could be found to be the effect of the cross-examination, Jarka is now asking us to rule as matter of law, and to hold that the witness' opinion was necessarily unjustified.

It is true that we are surprised that filing the pleadings involved in the state court case, described by the witness as a run-of-the-mill action, should be thought worth $300, but perhaps there is a local custom that places a higher value on such efforts in maritime cases, as the witness' testimony suggested. No contradictory testimony of any sort was offered. We are not prepared to say on this record that the court's ultimate finding was plainly erroneous.

The judgment of the District Court in favor of United States Lines in the total amount of $4200 is reduced by the sum of $1731, to $2469, and as so modified is affirmed.

The judgment dismissing the counterclaim is mooted.